UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM RAZO,<br><br>        Plaintiff,<br><br>   v.<br><br>TIMEC COMPANY, INC., et al.,<br><br>        Defendants. | Case No. 15-cv-03414-MEJ<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 29 |

## INTRODUCTION

Pending before the Court is the parties' joint discovery dispute letter in which Defendants Timec Company, Inc. and Transfield Services, Ltd. (collectively, "Transfield") seek to reopen Plaintiff Sam Razo's deposition for an additional four hours. Dkt. No. 29. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

Razo alleges Transfield retaliated against him for taking protected medical leave, discriminated against him based on his age, and wrongfully terminated him on August 4, 2014. First Am. Compl. ¶ 14, Dkt. No. 15. The following allegations are taken from his First Amended Complaint.

Razo began working for Transfield on April 16, 1990. *Id.* ¶ 5. In approximately 2014, Razo's eyesight began to deteriorate and, after consulting with his optometrist, he elected to undergo surgery on both eyes. *Id.* ¶ 16. He underwent his first eye surgery on April 8, 2014. *Id.* ¶ 17. One day before his scheduled surgery, Transfield demoted Razo from General Foreman to Craft Foreman, a salary decrease of $3.00 per hour. *Id.* Between his first eye surgery and his

second eye surgery on July 28, 2014, Razo was ordered to stay off work by his doctor on several occasions. *Id.* ¶ 19. During this time, Transfield again took steps to decrease his salary and demote him. *Id.*

Razo was approved to go back to work on August 4, 2014. *Id.* ¶ 20. That day, he learned his former position had been given to a new employee hired one week before his return from medical leave. *Id.* Razo's new position was a substantial demotion, and he was stripped of any seniority he had gained in the prior 24 years with Transfield. *Id.* ¶¶ 21-22. Razo met with his supervisor, John Gutierrez, and told him: "If this is the way it's going to be, me being tossed there, tossed back, I'd rather be laid off than be humiliated doing a job that is so below my work status." *Id.* ¶ 22. Gutierrez responded, "I'm going to go ahead and check on it," and after returning, told Razo: "We will give you the lay off." *Id.*

Razo filed his initial Complaint on July 24, 2015 (Dkt. No. 1) and filed his First Amended Complaint on September 24, 2015. He asserts eight causes of action: (1) Retaliation under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq.; (2) Retaliation under the California Family Rights Act ("CFRA"), Cal. Gov. Code § 12945.2; (3) FMLA Leave Interference; (4) CFRA Leave Interference; (5) Age Discrimination under the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940, et seq.; (6) FEHA disability discrimination; (7) failure to investigate and prevent discrimination under FEHA; and (8) Constructive Discharge (wrongful termination in violation of public policy).

On October 30, 2015, the Court issued a Case Management Order setting a discovery cut-off date of April 12, 2016. Dkt. No. 20.

On February 11, 2016, Razo sat for his first day of deposition. Jt. Ltr. at 1. He sat for a second day of deposition on March 17, 2016. *Id.* At deposition, Plaintiff testified as follows:

> Q. Okay. Do you know why you were referred to Dr. Houston?
> A. Because I had high blood pressure. (Razo Dep. 148:20-22)
>
> \*\*\*
> Q. Let me ask you some questions about the sleep problems that you mentioned. Now, before you were separated from the company, did you have any problems in sleeping?
> A. No. (Razo Dep. 244:21-24)

>                             \*\*\*
> Q. Okay. Now, with regard to the sleep difficulties, is it a problem in going to sleep or is it a problem where you wake up during the night?
> A. When I wake up, I wake up about every hour and a half to two at the most.
> Q. And before the separation from the company, had you ever had this type of problem?
> A. No, never. (Razo Dep. 245:9-16)
>
>                             \*\*\*
> Q. Okay. And with respect to the emotional distress that you've been explaining, is it a circumstance where, when you're not working, you feel kind of lost in terms of what you're going to do with your day?
> A. Like we're talking like when I'm laid off.
> Q. Right.
> A. Okay. I feel real bad. I do.
> Q. Have you talked to anyone in the health care professions, a psychologist or medical doctor or psychiatrist, about these feelings?
> A. No, I haven't.
> Q. Have you talked to a counselor, a therapist, about these feelings?
> A. No, I haven't. (Razo Dep. 251:9-23)
>
>                             \*\*\*
> Q. I just want to make sure I'm covering everything so that I have a complete understanding of what it is you're experiencing. Is there anything I've missed?
> A. I don't think so. (Razo Dep. 252:24-253:8)
>
>                             \*\*\*
> Q. Have you sought the advice of any doctor for problems with your sleeping?
> A. No. (Razo Dep. 253:17-19).

*Id.*

On March 28, 2016, Transfield received a medical release from Razo authorizing Kaiser Permanente to release his treatment records. *Id.* at 2. On March 29, Transfield subpoenaed medical records from Mitchell John Houston, Ph.D., at Kaiser. *Id.* On April 13, Transfield's counsel received responsive documents from Kaiser, which revealed that Razo visited Dr. Houston on at least four occasions before his resignation from Transfield, including June 2, June 23, July 8, and August 4, 2014. *Id.* On or about June 5, 2014, and prior to his August 4, 2014 resignation from Transfield, Razo provided Transfield with a work release from Dr. Houston releasing him from work from May 30, 2014 to July 2, 2014. *Id.*

Transfield now seeks to re-depose Razo based on the records it received from Kaiser. *Id.* at 3-4. It argues Razo made material misrepresentations at his depositions, including testifying

that he had not consulted a psychologist prior to his resignation, was referred to Dr. Houston for issues related to high blood pressure, never had sleeping issues before resigning, and "did not think" there was anything missing from his testimony regarding "bad feelings" and sleep issues. *Id.* at 3. Despite this testimony, Transfield contends the Kaiser records show Dr. Houston did not treat Plaintiff for blood pressure issues as he is a psychologist who treated Plaintiff for insomnia, anxiety and depression; at no point do any of Razo's medical records indicate he received treatment or was referred to Dr. Houston for high blood pressure; and at no point did Razo provide information suggesting his condition necessitating leave had changed from issues related to his eyes to depression, anxiety, and insomnia. *Id.* Transfield seeks to re-depose Razo to determine the true extent of his emotional distress prior to his resignation, whether he lied about the reasons for his leave, and whether he was eligible for FMLA protected leave for his true conditions revealed through his medical records. *Id.*

In response, Razo argues Transfield should not be permitted to take a further deposition as it failed to conduct discovery in a timely manner. *Id.* at 5. Razo notes he disclosed Dr. Houston on November 20, 2015 as part of his initial disclosures, along with a statement that Dr. Houston "Placed Plaintiff on medical leave in 2014." *Id.* He argues Transfield had ample notice regarding Dr. Houston's relevance to this case yet did not notice his deposition before the discovery cut-off deadline and did not subpoena his medical records or conduct any discovery regarding Dr. Houston prior to taking Plaintiff's deposition. *Id.* Razo also notes Transfield has not conducted any written discovery in this case, including discovery regarding Dr. Houston and, other than Razo's deposition, has not deposed any witnesses listed in Razo's initial disclosures, including Dr. Houston. *Id.* Although Transfield deposed Razo on February 11 and March 17, 2016, Razo notes that prior to his deposition, Transfield did not conduct any written discovery regarding his medical providers and did not subpoena any medical records related to his medical condition or emotional distress. *Id.*

As to the reasons Transfield provides for permitting a further deposition, Razo notes defense counsel's question regarding treatment for emotional distress was limited to treatment he received after he had already been laid off, and he was never asked if he received any treatment

4

for his emotional distress during the time that he was still employed by Transfield. *Id.* To the extent Transfield argues Razo is trying to hide a pre-existing condition, Razo responds that Dr. Houston's medical notes indicate that the onset of his condition was a result of his demotion and salary decrease at work after he went on his medical leave on April 8, 2014. *Id.* In regards to treatment for sleep, Razo admits he did fail to recall he mentioned having insomnia to Dr. Houston, but Transfield does not take responsibility for failing to provide him with documents that could have refreshed his memory. *Id.* Razo maintains Transfield "has not shown any diligence in conducting timely discovery in this matter, strategically chose to depose Plaintiff before doing any discovery related to Dr. Houston, and is now pointing its finger at a 79-year-old Plaintiff for failing to properly recollect events that transpired two years ago." *Id.* at 6. Despite this, Razo has agreed to stipulate to a half-day (four hour) deposition of Dr. Houston. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 16 requires the trial court to enter pretrial scheduling orders which set dates for the completion of discovery, hearings on non-dispositive and dispositive motions, trial, and other matters. Rule 16(b)(4) provides the 'scheduling order may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When a party seeks to continue the dates set by the court, it must first show 'good cause' for modification of the order under Rule 16(b). *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

The good cause inquiry primarily considers the diligence of the party seeking amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). A party demonstrates good cause by establishing that, even with the exercise of due diligence, he or she was unable to meet the scheduling deadlines. *Zivkovic*, 302 F.3d at 1087; *Johnson*, 975 F.2d at 609. Where the moving party has not been diligent, the inquiry ends and the motion should be denied. *Zivkovic*, 302 F.3d at 1087; *Johnson*, 975 F.2d at 609 ("Although the existence or degree of prejudice to the party opposing modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.").

## DISCUSSION

As noted above, the Court's scheduling order set April 12, 2016 as the deadline for

discovery. Despite this, it appears the parties informally agreed in November 2015 "to a hold on discovery until the completion of mediation scheduled in February 2016 with the exception that Plaintiff would be deposed for half a day and Plaintiff's counsel could take the deposition of an employee of Defendant for half a day prior to mediation." Jt. Ltr. at 3. The parties participated in mediation on February 29, 2016, but were unable to settle.[1] While not penalizing them for their efforts at reaching an informal resolution, the "[p]arties must understand that they will pay a price for failure to comply strictly with scheduling and other orders[.]" *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). "In these days of heavy caseloads, trial courts . . . set schedules and establish deadlines to foster the efficient treatment and resolution of cases." *Id.* Transfield knew of the impending April 12 discovery cut-off, but did not seek an extension. This alone can end the inquiry. *See Bickler v. Senior Lifestyle Corp.*, 2010 WL 342584, at *2 (D. Ariz. Jan. 28, 2010) (finding good cause did not exist where "[t]he parties' decision to stop discovery while a mediation was held was made with full knowledge of the Court's schedule and the Court's warning, and without any request to adjust the schedule.").

However, even if the Court were to consider extending the discovery deadline, Transfield has not established good cause for a further deposition of Razo. Unless otherwise ordered by the Court or stipulated by the parties, a deposition is presumptively limited to one day of seven hours. Fed. R. Civ. P. 30(d)(1). Determining whether a further examination is warranted requires a specific factual inquiry: "The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstances impedes or delays the examination." *Id.* In general, "[a] party who seeks leave of court to exceed the limit of one day of seven hours 'is expected to show good cause to justify such an order.'" *Hernandez v. Best Buy Co., Inc.*, 2014 WL 5307175, at *1 (S.D. Cal. Oct. 15, 2014) (quoting Fed. R. Civ. P. 30(d), advisory committee note (2000 Amendment)).

Although Transfield has already deposed Razo over the course of two days, it argues Razo misled it by testifying that he was referred to Dr. Houston for issues related to high blood pressure.

---

[1] The ADR Department entered a Certification of Mediation in ECF on March 23, 2016, but there is no document or docket number associated with the certification.

1    Jt. Ltr. at 3.  Transfield maintains it should be permitted to further question Razo because "Dr.
2    Houston did not treat Plaintiff for blood pressure issues, rather Dr. Houston is a psychologist who
3    treated Plaintiff for insomnia, anxiety and depression." *Id.*  However, Razo did not testify that he
4    received any high blood pressure treatment from Dr. Houston, only that he was referred to him
5    because of high blood pressure.  *Id.* at 1.  This testimony does not appear to be misleading—while
6    Razo testified he was referred to Dr. Houston because he had high blood pressure, there is no
7    indication Razo represented that he received any high blood pressure treatment from Dr. Houston.
8    Further, Razo disclosed Dr. Houston's Ph.D. identity on November 20, 2015 in his initial
9    disclosures, along with Dr. Houston's contact information, and a statement that Dr. Houston
10   "Placed Plaintiff on medical leave in 2014."  *Id.* at 4.  On that same date, Transfield produced
11   documents, as part of its initial disclosures, including a Work Status Report issued by Dr. Houston
12   dated June 2, 2014 and stating, "This patient is placed off work from 5/30/2014 through
13   7/2/2014," and a Medical Release Form dated June 1, 2014 also issued by Dr. Houston.
14   Transfield had ample notice regarding Dr. Houston's relevance to this case prior to Razo's
15   deposition.

16   Transfield further argues Razo testified he had not consulted a psychologist prior to his
17   resignation and he never had sleeping issues before resigning, yet the documents obtained from
18   Dr. Houston reveal these statements to be untruthful.  *Id.* at 3.  As to treatment for sleep, Razo
19   admits he told Dr. Houston he had insomnia, but he failed to recall this at his deposition.  *Id.* at 5.
20   Transfield has the medical records and Razo's explanation of why he did not testify as to this
21   statement; it is unclear what more Transfield can obtain that requires a four hour deposition.
22   Further, other than Transfield's conjecture, there is no indication Razo sought to withhold
23   information.  In fact, he provided Transfield with a medical release authorizing the release of his
24   records, and Transfield does not argue that Razo was not diligent in providing this release.
25   Moreover, Razo has agreed to stipulate to depositions of Dr. Houston and other key witnesses, as
26   well as to permit Transfield to obtain medical records from another medical provider, Dr.
27   Aleksander Isazade.  Dkt. No. 32.  Rather than Razo seeking to withhold information, the record
28   reflects the parties agreed to an informal stay of discovery pending mediation and, once the parties

7

were unable to reach an informal resolution, Razo agreed to produce discovery past the deadline. Thus, there appears to be no prejudice.

## CONCLUSION

Given the record before it, the Court finds Transfield has not established good cause for a further deposition of Razo. Accordingly, Transfield's request is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 21, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge