UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM RAZO,<br>        Plaintiff,<br>v.<br>TIMEC COMPANY, INC., et al.,<br>        Defendants. | Case No. 15-cv-03414-MEJ<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 30 |

## INTRODUCTION

Pending before the Court is the parties' joint discovery dispute letter regarding Plaintiff Sam Razo's Request for Production of Documents. Dkt. No. 30. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

Razo alleges Transfield retaliated against him for taking protected medical leave, discriminated against him based on his age, and wrongfully terminated him on August 4, 2014. First Am. Compl. ¶ 14, Dkt. No. 15. The following allegations are taken from his First Amended Complaint.

Razo began working for Transfield on April 16, 1990. *Id.* ¶ 5. In approximately 2014, Razo's eyesight began to deteriorate and, after consulting with his optometrist, he elected to undergo surgery on both eyes. *Id.* ¶ 16. He underwent his first eye surgery on April 8, 2014. *Id.* ¶ 17. One day before his scheduled surgery, Transfield demoted Razo from General Foreman to Craft Foreman, a salary decrease of $3.00 per hour. *Id.* Between his first eye surgery and his second eye surgery on July 28, 2014, Razo was ordered to stay off work by his doctor on several occasions. *Id.* ¶ 19. During this time, Transfield again took steps to decrease his salary and

1   demote him. *Id.*

2   Razo was approved to go back to work on August 4, 2014. *Id.* ¶ 20. That day, he learned
3   his former position had been given to a new employee hired one week before his return from
4   medical leave. *Id.* Razo's new position was a substantial demotion, and he was stripped of any
5   seniority he had gained in the prior 24 years with Transfield. *Id.* ¶¶ 21-22. Razo met with his
6   supervisor, John Gutierrez, and told him: "If this is the way it's going to be, me being tossed there,
7   tossed back, I'd rather be laid off than be humiliated doing a job that is so below my work status."
8   *Id.* ¶ 22. Gutierrez responded, "I'm going to go ahead and check on it," and after returning, told
9   Razo: "We will give you the lay off." *Id.*

10   Razo filed his initial Complaint on July 24, 2015 (Dkt. No. 1) and filed his First Amended
11   Complaint on September 24, 2015. He asserts eight causes of action: (1) Retaliation under the
12   Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq.; (2) Retaliation under
13   the California Family Rights Act ("CFRA"), Cal. Gov. Code § 12945.2; (3) FMLA Leave
14   Interference; (4) CFRA Leave Interference; (5) Age Discrimination under the Fair Employment
15   and Housing Act ("FEHA"), Cal. Gov. Code § 12940, et seq.; (6) FEHA disability discrimination;
16   (7) failure to investigate and prevent discrimination under FEHA; and (8) Constructive Discharge
17   (wrongful termination in violation of public policy).

18   On March 11, 2016, Razo served on Transfield his Request for Production of Documents,
19   Set One, Request No. 7, which seeks documents pertaining to the organizational structure of
20   Transfield's On the Run Welder's group across the United States. Jt. Ltr., Ex. 1. Although not
21   made explicit in the parties' letter, it appears Razo was a member of this group as he alleges that
22   his job with the "welder's group" was given to the new employee. First Am. Compl. ¶ 20.

23   On April 11, 2016, Transfield refused to produce any responsive documents on the
24   following grounds: overly broad, relevance, assumes facts not in evidence, and disproportionate to
25   the needs of the case. Jt. Ltr. at 1. Razo now seeks to compel Transfield's response.

26   In the parties' letter, Transfield argues the request is overbroad because it seeks
27   information regarding the structure of the welder's group throughout the United States and without
28   any time limitation. *Id.* at 4. Transfield further argues the request is disproportionate to the needs

of the case because the group includes more than welders. It notes John Gutierrez, Razo's direct supervisor, testified "It's not just the welders group. There's several groups. There's a mechanical group. There's several different crews per se. There's several craft foremen with crews, several craft foremen with crews. The welders group was a small crew at the time." *Id.* at 5 (citing Gutierrez Dep. 72:5-10).

Razo argues the request is relevant because it seeks information regarding the structure of the welder's group, to which Razo belonged, and Gutierrez testified that his demotion was a result of "restructuring." Jt. Ltr. at 3. In response to Transfield's overbroad objection, Razo has agreed to limit the request to the 2012-2014 time period and to California only. *Id.* at 3.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015 amendments). Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S.

3

20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

**DISCUSSION**

There appears to be no dispute that Request No. 7 is relevant—Razo's direct supervisor testified that his demotion was a result of restructuring, and the request seeks information regarding this structure. Further, Transfield does not address its privilege objection in the letter, although any such concerns could be remedied by a privilege log and/or protective order. Thus, the Court's focus is on proportionality and whether Razo's request is tailored to the needs of the case. The Court agrees that the initial request is likely overbroad, given that it seeks information throughout the United States and without any time limitation. Razo's proposed limitation for the 2012-2014 time period appears more reasonable.

As to his proposal limiting production to California, Razo does not allege a broad, company-wide culture that sanctions discrimination, but instead focuses on the Richmond worksite and his colleagues located there. "'[T]he standard for determining the geographic scope of discovery focuses on the source of the complained discrimination—the employing work unit.'" *Cannata v. Wyndham Worldwide Corp.*, 2011 WL 2923888, at *3 (D. Nev. July 18, 2011) (quoting *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning*, 586 F. Supp. 2d 1250, 1256 (D. Kan. 2008)); *Riviera v. City & Cty. of Denver*, 365 F.3d 912, 922 (10th Cir. 2004). Thus, production limited to the Richmond work site at which Razo worked is appropriate.

Finally, given Gutierrez's testimony that the "On the Run Welder's group" includes more than just the welder's group to which Razo belonged, it is not clear whether the request could be further narrowed in scope. During the meet and confer process, Razo inquired into how this information is stored and defense counsel indicated that he did not know. Jt. Ltr. at 4. Accordingly, while a further response from Transfield is appropriate, the parties must first determine the scope of the On The Run Welder's group and thereafter productively meet and

1  confer regarding Transfield's objection.

## CONCLUSION

Based on the analysis above, the Court **GRANTS** Razo's request to compel Transfield's response to Request No. 7, but limited to the Richmond worksite from 2012-2014. Transfield shall provide Razo with an explanation of the scope of the On the Run Welder's group and how this information is stored by April 28, 2016, after which the parties shall meet and confer in compliance with the undersigned's Discovery Standing Order to determine the appropriate scope of production. If unable to reach an agreement, the parties shall file an updated joint letter.

**IT IS SO ORDERED.**

Dated: April 21, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge


confer regarding Transfield's objection.

## CONCLUSION

Based on the analysis above, the Court **GRANTS** Razo's request to compel Transfield's response to Request No. 7, but limited to the Richmond worksite from 2012-2014. Transfield shall provide Razo with an explanation of the scope of the On the Run Welder's group and how this information is stored by April 28, 2016, after which the parties shall meet and confer in compliance with the undersigned's Discovery Standing Order to determine the appropriate scope of production. If unable to reach an agreement, the parties shall file an updated joint letter.

**IT IS SO ORDERED.**

Dated: April 21, 2016

MARIA-ELENA JAMES
United States Magistrate Judge