UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAM RAZO,

                Plaintiff,

      v.

TIMEC COMPANY, INC., et al.,

                Defendants.

Case No.  15-cv-03414-MEJ

**DISCOVERY ORDER**

Re: Dkt. No. 31

## INTRODUCTION

Pending before the Court is the parties' joint discovery dispute letter regarding Plaintiff Sam Razo's Request for Production of Documents.  Dkt. No. 31.  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

Razo alleges Transfield retaliated against him for taking protected medical leave, discriminated against him based on his age, and wrongfully terminated him on August 4, 2014. First Am. Compl. ¶ 14, Dkt. No. 15.  The following allegations are taken from his First Amended Complaint.

Razo began working for Transfield on April 16, 1990.  *Id.* ¶ 5.  In approximately 2014, Razo's eyesight began to deteriorate and, after consulting with his optometrist, he elected to undergo surgery on both eyes.  *Id.* ¶ 16.  He underwent his first eye surgery on April 8, 2014.  *Id.* ¶ 17.  One day before his scheduled surgery, Transfield demoted Razo from General Foreman to Craft Foreman, a salary decrease of $3.00 per hour.  *Id.*  Between his first eye surgery and his second eye surgery on July 28, 2014, Razo was ordered to stay off work by his doctor on several occasions.  *Id.* ¶ 19.  During this time, Transfield again took steps to decrease his salary and demote him.  *Id.*

Razo was approved to go back to work on August 4, 2014.  *Id.* ¶ 20.  That day, he learned his former position had been given to a new employee hired one week before his return from

United States District Court
Northern District of California

1   medical leave.  *Id.*  Razo's new position was a substantial demotion, and he was stripped of any

2   seniority he had gained in the prior 24 years with Transfield.  *Id.* ¶¶ 21-22.  Razo met with his

3   supervisor, John Gutierrez, and told him: "If this is the way it's going to be, me being tossed there,

4   tossed back, I'd rather be laid off than be humiliated doing a job that is so below my work status."

5   *Id.* ¶ 22.  Gutierrez responded, "I'm going to go ahead and check on it," and after returning, told

6   Razo: "We will give you the lay off."  *Id.*

7       Razo filed his initial Complaint on July 24, 2015 (Dkt. No. 1) and filed his First Amended

8   Complaint on September 24, 2015.  He asserts eight causes of action: (1) Retaliation under the

9   Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq.; (2) Retaliation under

10  the California Family Rights Act ("CFRA"), Cal. Gov. Code § 12945.2; (3) FMLA Leave

11  Interference; (4) CFRA Leave Interference; (5) Age Discrimination under the Fair Employment

12  and Housing Act ("FEHA"), Cal. Gov. Code § 12940, et seq.; (6) FEHA disability discrimination;

13  (7) failure to investigate and prevent discrimination under FEHA; and (8) Constructive Discharge

14  (wrongful termination in violation of public policy).

15      On March 11, 2016, Razo served on Transfield his Request for Production of Documents,

16  Set One, Request Nos. 33-38, which seek information related to prior complaints made against

17  Transfield by other employees related to age discrimination, unlawful discrimination, unlawful

18  retaliation, FMLA interference, CFRA interference, and constructive termination from 1995 to the

19  present.  Jt. Ltr., Ex. 1.  On April 11, 2016, Transfield refused to produce any responsive

20  documents on the following grounds: overbroad, employee privacy rights, relevance,

21  disproportionate to the needs of the case, attorney-client privilege and attorney work product.  *Id.*

22  Razo now seeks to compel Transfield's response, arguing the information is relevant because he

23  "has asserted a failure to prevent cause of action, [he] is entitled to 'me too' evidence, and

24  [Transfield] has pled the avoidable consequences defense."  *Id.* at 3.

25                          **LEGAL STANDARD**

26      Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding

27  any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

28  needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Factors to consider include "the importance of the

United States District Court
Northern District of California

2

1    issues at stake in the action, the amount in controversy, the parties' relative access to relevant

2    information, the parties' resources, the importance of the discovery in resolving the issues, and

3    whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

4    Discovery need not be admissible in evidence to be discoverable. *Id.*  However, "[t]he parties and

5    the court have a collective responsibility to consider the proportionality of all discovery and

6    consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee notes (2015

7    amendments).  Thus, there is "a shared responsibility on all the parties to consider the factors

8    bearing on proportionality before propounding discovery requests, issuing responses and

9    objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016

10   WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at

11   *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a

12   "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor

13   their efforts to the needs of th[e] case").

14       Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is

15   appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S.

16   20, 36 (1984).  "The court may, for good cause, issue an order to protect a party or person from

17   annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting

18   disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3)

19   preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to

20   certain matters.  Fed. R. Civ. P. 26(c)(1).

21                                        **DISCUSSION**

22       As an initial matter, Transfield's privacy and privilege objections are no longer in play as

23   the parties met and conferred on April 18, 2016 and agreed to limit the type of complaints to those

24   filed in state and federal court, and with the Department of Fair Employment and Housing and the

25   Equal Employment Opportunity Commission.  Jt. Ltr. at 2.  The parties also attempted to reach a

26   compromise on the scope of Razo's requests but four areas remain in dispute: (1) time period

27   (Transfield agreed to production limited to 14 months, Razo seeks 5 years); (2) scope (Transfield

28   agree to produce complaints related to Johnny Gutierrez, Razo's immediate supervisor, while

United States District Court
Northern District of California

3

1   Razo seeks complaints for all supervisors involved); (3) location (Transfield agreed to production

2   for the Richmond work site at which Razo worked, while Razo seeks complaints for all of

3   California); and (4) nature of the complaints (Transfield agreed to produce complaints related to

4   age discrimination, disability discrimination, FMLA interference, CFRA interference, FMLA

5   retaliation and CFRA retaliation, while Razo also seeks to include complaints regarding failure to

6   prevent age discrimination and failure to prevent disability discrimination).  *Id.*

7          First, as to the time period, Razo notes he has worked for the company for over 20 years.

8   *Id.* at 3.  However, he alleges the discrimination began in 2014, and courts typically limit

9   discovery to a "reasonable time" from the alleged discrimination.  *See*, *e.g.*, *Tumbling v. Merced*

10  *Irr. Dist.*, 262 F.R.D. 509, 515 (E.D. Cal. 2009) (limiting discovery of prior complaints to period

11  beginning two years prior to earliest alleged incident, where request covered period beginning

12  approximately ten years before); *Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2005)

13  (affirming limitation on discovery in discrimination action to complaints filed in department in

14  which plaintiff worked no more than one year before the actions at issue); *Manning v. General*

15  *Motors*, 247 F.R.D. 646, 652-53 (D. Kan. 2007) (limiting temporal scope of discovery in

16  employment discrimination lawsuit to three years prior and two years after October 2005 liability

17  period; citing additional cases limiting temporal scope to two and a half or three years prior to

18  discriminatory conduct); *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D. Minn. 1997)

19  (finding ten year period of discovery to be unwarranted and excessive and restricting the time

20  parameters of discovery to include a period beginning two years prior to plaintiff's termination

21  and two years after his separation from employment).  Accordingly, considering the factors

22  bearing on proportionality, the Court finds it appropriate to limit Razo's request to two years

23  before his layoff.

24         Second, as to scope, Transfield seeks to limit production to complaints regarding

25  Gutierrez, yet Razo names several Transfield employees that were potentially involved in the

26  decisions regarding his demotion and ultimate layoff.  *See* First Am. Compl. ¶¶ 18, 20, 23.  Thus,

27  Razo's request for complaints for all supervisors involved is relevant to his claim and proportional

28  to the case.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   Third, as to location, Razo argues that "most witnesses employed by [Transfield] who were

2   deposed, testified that they had been employed at several California refineries, and that their

3   employment with [Transfield] was not limited to only the Richmond work site."  Jt. Ltr. at 3.

4   However, Razo does not allege a broad, company-wide culture that sanctions discrimination, but

5   instead focuses on the Richmond worksite and his colleagues located there.  "'[T]he standard for

6   determining the geographic scope of discovery focuses on the source of the complained

7   discrimination—the employing work unit.'"  *Cannata v. Wyndham Worldwide Corp.*, 2011 WL

8   2923888, at *3 (D. Nev. July 18, 2011) (quoting *White v. Graceland Coll. Ctr. for Prof'l Dev. &*

9   *Lifelong Learning*, 586 F. Supp. 2d 1250, 1256 (D. Kan. 2008)); *Riviera v. City & Cty. of Denver*,

10   365 F.3d 912, 922 (10th Cir. 2004).  Thus, production limited to the Richmond site at which Razo

11   worked is appropriate.

12   Finally, as to the nature of the complaints, Transfield has agreed to produce complaints

13   related to all categories except failure to prevent age discrimination and failure to prevent

14   disability discrimination.  However, given Razo's failure to prevent allegations, as well as the

15   limitations discussed above, the Court finds this information, even if not ultimately admissible at

16   trial, is relevant and proportional to the case.

17   ## CONCLUSION

18   Based on the analysis above, the Court **GRANTS** Razo's request to compel responses to

19   Request Nos. 33-38, but limited as follows: (1) complaints filed in state and federal court, and

20   with the Department of Fair Employment and Housing and the Equal Employment Opportunity

21   Commission; (2) up to two years before Razo's layoff; (3) filed against all supervisors involved;

22   (4) based in the Richmond site at which Razo worked; and (5) related to age discrimination,

23   disability discrimination, FMLA interference, CFRA interference, FMLA retaliation, CFRA

24   retaliation, failure to prevent age discrimination, and failure to prevent disability discrimination.

25   **IT IS SO ORDERED.**

26   Dated: April 21, 2016

27   _____

28   MARIA-ELENA JAMES
United States Magistrate Judge