UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM RAZO,<br><br>               Plaintiff,<br><br>    v.<br><br>TIMEC COMPANY, INC., et al.,<br><br>               Defendants. | Case No.  15-cv-03414-MEJ<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 42 |

*United States District Court*
*Northern District of California*

**INTRODUCTION**

Sam Razo ("Plaintiff") alleges his former employers TIMEC Company, Inc. ("TIMEC") and Transfield Services, Ltd. ("Transfield Ltd.") (together, "Defendants") discriminated against him based on his age and disability, retaliated against him for taking medical leave, and wrongfully terminated him in violation of public policy.  First Am. Compl. ("FAC"), Dkt. No. 15. Pending before the Court is Defendants' Motion for Summary Judgment.  Motion, Dkt. No. 42; Mem. Points & Auths. ("Mot."), Dkt. No. 43.  Plaintiff filed an Opposition (Opp'n, Dkt. No. 55), and Defendants filed a Reply (Dkt. No. 56).  All parties have consented to the Court's jurisdiction. *See* Dkt. Nos. 9, 10.  The Court heard the matter on September 8, 2016, and ordered the parties to meet and confer and submit a joint statement of undisputed facts.  *See* Dkt. Nos. 60, 61.  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for the following reasons.

**BACKGROUND**

Except where otherwise noted, the following facts are undisputed for purposes of summary judgment.  The Court will address the parties' contentions that certain facts are disputed, resolve evidentiary objections, and correct characterizations of evidence in footnotes where these pertain

to material facts the Court relies upon in reaching its decision.

**A.     Plaintiff's Career at TIMEC**

For approximately 25 years and until August 4, 2014, Plaintiff worked for TIMEC.  Joint Stmt. of Undisputed Facts ("UF"), No. 1, Dkt. No. 62.[1]  TIMEC "provide[s] maintenance services for oil refineries[; a]ll TIMEC employees work at locations owned by refinery customers." Declaration of Philip Tegtmeier ("Tegtmeier Decl.") ¶ 6, Dkt. No. 47.  The events relevant to Plaintiff's claims occurred at a refinery operated by Chevron in Richmond, California (the "Richmond Chevron refinery").  Plaintiff was born around 1937.  *Id*. ¶ 14.

TIMEC's records reflect that Plaintiff worked as a pipefitter as late as the year 2000, but otherwise the records indicate Plaintiff worked as a welder.  *See* Amended Declaration of Navruz Avloni ("Avloni Decl."), Dkt. No. 63, at Ex. 23 (2000 performance review indicating Plaintiff is a "longtime pipefitter" and rating him as "above satisfactory" in all categories).[2]  In 2008, TIMEC promoted Plaintiff to general foreman of the welder's group in TIMEC's "on-the-run" group at the Richmond Chevron refinery.  UF No. 5.  The on-the-run group was part of the maintenance division, but performed maintenance in emergency situations and without shutting the machinery down, i.e., while the machinery were "running."  *See* Declaration of Douglas Johnston ("Johnston Decl."), Dkt. No. 50, at Ex. H (Defs.' Holt Dep.) at 113:24-114:25.  In 2014, Plaintiff supervised the five to six welders that were assigned to the on-the-run group.  *Id.*, Ex. E (Defs.' Razo Dep.) at 221:12-15; Defs.' Holt Dep. at 112:3-6.

Plaintiff did not receive any negative written performance evaluations while he held this position.  UF No. 6.  On the contrary, for the year ending June 30, 2013, Plaintiff either met or

---

[1] The parties have stipulated to a number of facts.  *See id*. at 1.

[2]  The Court overrules Defendants' objection that this document is inadmissible on authenticity and foundation grounds.  *See* Reply at 1-3. The document was produced by TIMEC, and it qualifies as an exception to the hearsay rule under the business records exception.  *See* Fed. R. Evid. R. 803(6).  Moreover, the performance evaluation could be presented in a form that would be admissible at trial through various witnesses.  As such, the Court properly may consider this document, as well as the other performance reviews attached to Avloni Decl., Ex. 1.  *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003); *see also Huynh v. Harasz*, 2016 WL 2757219, at *9 (N.D. Cal. May 12, 2016) (overruling objections where letters could be authenticated by recipients).

exceeded expectations on every objective listed on his Workforce Development Review Form. Avloni Decl., Ex. 1 at TIMEC000016.[3]  His manager wrote Plaintiff "[d]oes great with other[s;] teaches all he knows to others;" "[d]oes great on keeping the clien[t] satisf[ied];" is "[v]ery well respected by group and alot of people in the refinery;" and concluded that "Sam Razo is on top of his career and does very well on accepting new rules and changes." *Id*. at TIMEC00016-19.  On November 13, 2013, Plaintiff received a year-end rating of "meets expectations," and his manager noted that Plaintiff "[s]erves well for me and the client." *Id*. at TIMEC00022.  On August 4, 2014, Plaintiff received only "satisfactory" or "very good" ratings on his evaluation; his evaluator commented: "Sam does a good job." *Id*. at TIMEC000571.

Between October 2013 and prior to August 2014, Razo's direct TIMEC supervisor was Superintendent Gustavo Aguilar; Aguilar was in turn supervised by TIMEC Project Manager Johnny Gutierrez; and Gutierrez was supervised by TIMEC Site Manager Richard Holt.  UF No. 7.  Kevin Taylor was the supervisor of the on-the-run group before Aguilar.  Avloni Decl., Ex. 26 (Pl.'s Taylor Dep.) at 12:14-17; Rebuttal Decl. of Patrick Mullen, Ex. A (Defs.' Reply Razo Dep.) at 79:8-20, Dkt. No. 56-1.  Chevron personnel, including Jeffrey Sullenger and Daniel Bernardy, interacted with TIMEC and exercised authority over certain decisions relating to TIMEC's staffing decisions at the Chevron Richmond refinery.  *See* Mot. at 6 (Bernardy supervised the on-the-run group for Chevron in 2014); *id*. at 9 (Sullenger of Chevron approved billing exception).

Witnesses in this case refer to several Transfield entities in their testimony and in relevant documents; keeping track of which entity a witness is discussing is paramount.  Employees of Defendant TIMEC Company, Inc. often referred to TIMEC as "Transfield Services."  Declaration of Donald Brown ("Brown Decl.") ¶ 4, Dkt. No. 44.  During 2013-2014, Transfield Services referred to "Transfield Services Resources and Energy," a business name registered with the state of California.  UF 34.  During 2013-2014, Defendant Transfield Ltd. was an Australian publicly-traded holding company.  UF No. 35.  Defendant TIMEC is an eighth-tier subsidiary of Defendant

---

[3]  Where exhibits comprise multiple pages, the Court identifies the specific pages(s) being discussed by Bates number(s).

United States District Court
Northern District of California

Transfield Ltd.  Tegtmeier Decl. ¶¶ 2-3; *id*., Ex. A.  During 2013-2014, Transfield Ltd. did not

have a U.S. taxpayer identification number, did not employ any individuals in the U.S., and did

not issue any W-2 statements.  UF No. 36.  During 2013-2014, TIMEC and Transfield Ltd. had no

board members in common and did not share any management.  UF No. 39.

**B.      TIMEC Demotes Plaintiff in April 2014**

Starting in late October 2013, Gutierrez began complaining to Holt that Plaintiff was not

performing the duties required of a general foreman, but there is no evidence Gutierrez

documented such complaints in writing.  UF No. 8.  Gutierrez testified he observed Plaintiff

performing tasks appropriate for a lower-ranking materials expediter, not tasks appropriate for a

general or craft foreman.  Johnston Decl., Ex. G (Defs.' Gutierrez Dep.) at 94:16-96:23, 99:15-21;

*see also* Declaration of John Gutierrez ("Gutierrez Decl.") ¶ 3, Dkt. No. 45.

Gutierrez also testified there was no need for a general foreman given the staffing levels and

projects being staffed, and that maintaining Plaintiff as general foreman was inefficient.  Defs.'

Gutierrez Dep. at 68:13-70:16, 75:16-25, 94:12-25.

In March 2014, Gutierrez verbally recommended to Holt that Plaintiff step down from his

general foreman position to a craft foreman position.  UF No. 9.  Although Holt believed Plaintiff

had worked well as the general foreman for the group, he nonetheless approved Gutierrez's

recommendation that Plaintiff be demoted from general foreman to craft foreman, and his pay

lowered accordingly.  Avloni Decl., Ex. 2 (Pl.'s Holt Dep.) at 138:5-13.  Taylor, however, "did not

understand the merit" of Gutierrez's complaints about Plaintiff.  Pl.'s Taylor Dep. at 41:4-17.

Also in March 2014, Plaintiff informed Aguilar and Holt he would be taking time off to

have eye surgery.  UF No. 10.  Plaintiff informed Holt he wanted to have surgery because his

"eyelids were closing over, so he couldn't open his eyes fully."  Pl.'s Holt Dep. at 72:2-7.  Aguilar

and Holt both told Plaintiff it was "fine" to take time off.  Defs.' Razo Dep. at 41:5-42:2; Pl.'s

Holt Dep. at 74:5-8.

On April 7, 2014, Gutierrez emailed Holt, asking him to approve a Personnel Action

Notice ("PAN") demoting Plaintiff to craft foreman and lowering his pay from $38/hour to

$35/hour.  UF No. 13; Avloni Decl., Ex. 21 at TIMEC000771.  The PAN, effective that day,

shows Plaintiff's position as general foreman earning $38/hour and his new position as craft foreman earning $35/hour.  *See* id. at TIMEC000772 (4/7/14 PAN).

The parties dispute whether TIMEC informed Plaintiff he was being demoted before he went on medical leave.  Gutierrez declares he informed Plaintiff in March 2014 that he would be demoted from general foreman to craft foreman for performance and budgetary reasons.  Gutierrez Decl. ¶ 3; *see also* Defs.' Holt Dep. at 92:25-93:13 (Holt testified Plaintiff told him he accepted craft foreman demotion before going on medical leave).  Gutierrez wrote Holt that he and Plaintiff "had the discussion you and I talked about.  He is good with the change.  He is at work today and will be taking the rest of the week off for personal business."  Avloni Decl., Ex. 21 at TIMEC000771.  Plaintiff denies Gutierrez ever informed him he was going to be demoted to craft foreman; and denies that Gutierrez ever told him that he was not performing duties consistent with the position of general foreman or with the position of craft foreman.  Avloni Decl., Ex. 14 (Pl.'s Razo Dep.) at 241:8-22.

**C.**      **Plaintiff's First Leave of Absence**

Plaintiff started his first leave of absence on April 8, 2014, with an anticipated return date of April 30, 2014.  Declaration of Bonnie Morgan ("Morgan Decl."), Ex. B, Dkt. No. 48; Avloni Decl., Ex. 17 at TIMEC000307 (Holt emailed TIMEC's Human Resources ("HR") department that Plaintiff's "return date" from this leave "was stated as 4.30.14 when he left.").  TIMEC's person most knowledgeable about the company's policies and procedures related to the Family and Medical Leave Act ("FMLA") testified that Plaintiff qualified for FMLA leave at that time.  Avloni Decl., Ex. 10 (Pl.'s Cerda Dep.) at 12:12-17, 42:16-20.

A Work Status Report from Plaintiff's physicians dated April 9, 2014, placed Plaintiff on medical leave and/or on modified activity through April 22, 2014.  *See* Avloni Decl., Ex. 5 at TIMEC000324 (4/9/14 Work Status Rept.).  Another Work Status Report dated April 29, 2014, extended Plaintiff's medical leave and/or modified activity through April 29, 2014.  *Id.* at TIMEC000327 (4/29/14 Work Status Rept.).  Plaintiff states he provided paperwork from his doctor to Bonnie Morgan, TIMEC's HR representative in California, in connection with this leave.  Pl.'s Razo Dep. at 159:1-16.  Morgan declares Plaintiff never provided TIMEC with the April 9,

United States District Court
Northern District of California

2014 Work Status Report (Morgan Decl. ¶ 5), but Defendants do not explain how they came to produce the document in this action if Plaintiff never provided it to them.

There is no written evidence TIMEC informed Plaintiff it was denying his request for FMLA leave in connection with the first eye surgery.  During the hearing, Defendants' counsel admitted that TIMEC had not sent Plaintiff a letter informing him it was denying his request for FMLA leave.

While he was on leave, Plaintiff received a check showing TIMEC had changed his hourly rate to $35/hour.  Def.'s Razo Dep. at 59:17-60:10.  On April 30, 2014, when he returned to work from his leave, Plaintiff asked Holt why his rate had changed. UF No. 14.  Holt asked Chevron whether he could raise Plaintiff's rate back to $38/hour and obtained approval to do so.  UF No. 15; *see also* Avloni Decl., Ex. 29 (email to Sullenger explaining: "A few weeks ago we made some changes in regards to the General foreman position here for TFS and moved Sam Razo to a foreman Position and brought in another individual to fill the rol[e] and responsibilities.  The issue I have is that I would like to keep Sam at his current pay rate if Chevron would approve of the billing.  Is this possible?"  Sullenger replied: "Approved"); Avloni Decl., Ex. 27 (Pl.'s Sullenger Dep.) at 31:2-32:2 (reviewing the email and stating he approved request because he "truly respect[s] and admire[s]" Plaintiff).  Plaintiff's title returned to general foreman.  Pl.'s Holt Dep. at 153:15-22.  Holt told Plaintiff he would "be going back to the weld group and still be in charge of the welders."  Pl.'s Razo Dep. at 230:17-20.  On June 6, 2014, TIMEC issued an adjustment check to Plaintiff paying him the $3.00/hour difference for the hours he had worked since April 30, 2014.  *See* Declaration of Rachel Wiedmer ("Wiedmer Decl.") ¶ 8, Dkt. No. 46; *id*. Ex. D (earning statement).

**D.      Plaintiff's Second Leave of Absence**

In June 2014, Plaintiff requested another medical leave because he did "not feel good." UF No. 16.  On June 5, 2014, Plaintiff delivered a doctor's note to Morgan, which excused him from work from May 30, 2014 through July 2, 2014.  *See* Defs.' Razo Dep. at 65:3-66:9; Morgan Decl. ¶ 6 & Ex. E at TIMEC000380 (6/2/14 Work Status Rept.).  The doctor's note does not describe the condition for which Plaintiff needed to take time off.  Morgan Decl., Ex. E at

1    TIMEC000380.

2         Plaintiff attempted to return to work on June 30, 2014 and again on July 14, 2014, but he

3    did not have a medical release from his doctor authorizing him to do so.  Morgan Decl. ¶¶ 7-9.  He

4    eventually returned to work on July 15, 2014.  *Id*. ¶ 9 & Ex. H.  On July 18, 2014, TIMEC

5    informed Plaintiff it had denied his request for FMLA leave because he had not returned required

6    paperwork to TIMEC, but informed him he would be receiving regular leave.  Johnston Decl. Ex.

7    K (Defs.' Teel Dep.) at 57:16-58:18; *id*., Ex. 84 (July 18, 2014 letter denying FMLA leave).

8    **E.    Reorganization at TIMEC**

9         When Gutierrez first started working at the Richmond facility, he testified the welders in

10   the on-the-run group reported to a general foreman (Plaintiff), and that there was no craft-foreman.

11   Defs.' Gutierrez Dep. at 45:18-24.  In late 2013 or early 2014, Gutierrez determined he wanted to

12   add a craft foreman to the group to whom the 5-6 welders in the on-the-run group would report.

13   *Id*. at 68:4-69:11.

14        While it is undisputed Gutierrez discussed this change with client representatives at

15   Chevron, the parties dispute whether Chevron initiated or merely approved the change in structure.

16   Gutierrez testified he spoke to Holt, Taylor, and Bernardy in June or July 2014 about

17   implementing the new structure.  *See* Defs.' Gutierrez Dep. at 72:12-21 (Bernardy asked Gutierrez

18   why Chevron was paying for a general foreman when there were only five welders working),

19   74:7-12 (conversation with Bernardy occurred in July 2014), 75:6-15 (Gutierrez discussed new

20   structure with Holt in June and July 2014); Avloni Decl., Ex. 3 (Pl.'s Gutierrez Dep.) at 80:23-

21   81:3 (spoke with Taylor about eliminating general foreman in July 2014).  Various TIMEC

22   employees testified they were told Plaintiff's position had been eliminated by Chevron.  *See*

23   Avloni Decl. Ex. 16 (Pl.'s Cook Dep.) at 46:5-18; *id*., Ex. 9 (Pl.'s Brown Dep.) at 163:8-18; *id*.,

24   Ex. 12 (Pl.'s Morgan Dep.) at 36:22-37:5; Pl.'s Cerda Dep. at 136:24-137:12.  Bernardy did not

25   recall ever instructing Gutierrez to eliminate the general foreman position.  Avloni Decl., Ex. 25

26   (Pl.'s Bernardy Dep.) at 18:9-19:12.

27        In July or August 2014, TIMEC split up the welders in the on-the-run group to attach

28   individual welders to pipefitter groups in the maintenance division (the maintenance division

United States District Court
Northern District of California

7

1   included both the on-the-run and routine maintenance groups); eliminated the general welding

2   foreman position; and brought on a piping foreman who would supervise the pipefitters and any

3   welders working with them.  Defs.' Holt Dep. at 112:7-114:23, 116:19-117:24.  Holt explained

4   that "most piping foremen are able to manage welders, so there's no need to just have a specific

5   individual just overseeing welders."  *Id.* at 117:19-24.

6           In late 2013/early 2014, TIMEC employee Collin Koutz approached Holt about

7   transferring to the maintenance division.  Avloni Decl., Ex. 28 (Pl.'s Koutz Dep.) at 16:1-13.

8   Koutz was the piping general foreman of TIMEC's Capital Projects group (UF No. 32; Defs.'

9   Koutz Dep. at 22:22-25:1), and was looking for a "lateral move" to that same level of

10  responsibility (Pl.'s Koutz Dep. at 16:19-23 (preferably looking for a general foreman position)).

11  Holt told Koutz he would see if such a position was available and let Koutz know.  Pl.'s Koutz

12  Dep. at 16:14-18.  Koutz also had extensive experience as a welder.  Johnston Decl., Ex. J (Defs.'

13  Koutz Dep.) at 12:14-18, 14:11-12.

14          In July 2014, Gutierrez asked Koutz to become a foreman "for the piping and welding

15  side" of the on-the-run group in the maintenance division.  Avloni Decl., Ex. 6 (Koutz PAN); Pl.'s

16  Koutz Dep. 18:6-24.  Koutz took a pay cut to take the position.  UF No. 32.  Koutz understood at

17  the time he took the position that it could lead to potential opportunities for advancement in the

18  future.  Pl.'s Koutz Dep. at 18:1-10.  He was 31 years old at the time.  *See* UF No. 33.

19  **F.      Plaintiff's Third Leave of Absence**

20          The parties dispute when Plaintiff informed TIMEC he would be taking a leave of absence

21  in connection with his second eye surgery.  Plaintiff testified he provided information regarding

22  the medical leave for this second eye surgery when he gave TIMEC the paperwork regarding his

23  first surgery.  Pl.'s Razo Dep. at 233:17-234:11 (when Plaintiff provided the paperwork for the

24  first operation, "the second operation was already set up.  [I]n that letter, it stated on there the

25  dates and everything about how long I'd be out.").  Defendants argue Plaintiff did not inform them

26  of the leave until July 14 or July 15, 2014, when Plaintiff "inform[ed] [Holt] he would be out

27  again for another surgery which [would take] place on Friday [July 18, 2014] and would not be

28  expected to be released back to work until sometime [the following] week."  Defs.' Holt Dep. at

United States District Court
Northern District of California

8

1    Ex. 37 (email from Holt to Krista Allen and other HR representatives).  On July 23, 2014, TIMEC

2    processed a PAN indicating it had received Plaintiff's FMLA certification.  *See* Avloni Decl., Ex.

3    15 ("FMLA eff. 7-18-14, physician's certification received placing him off work from 7-18-14

4    through 7-25-14"), Dkt. No. 63-3.

5            Plaintiff returned to work on August 4, 2014 after providing paperwork from his doctor

6    certifying he was fit to do so.  Defs.' Razo Dep. at 83:5-10; Pl.'s Razo Dep. at 239:4-13.  On

7    Plaintiff's first day back, Gutierrez asked him to accept a position as materials expediter, at

8    $32/hour.  Pl.'s Gutierrez Dep. at 238:1-19, 255:8-10; Defs.' Gutierrez Dep. at 94:16-95:15.  A

9    materials expediter receives materials, picks up and delivers items, is accountable for keeping

10   track of material, drives a truck, and operates a forklift.  Defs.' Gutierrez Dep. at 83:17-25.

11   Gutierrez instructed Plaintiff to "take care of the toolroom" then go work with one of the

12   mechanics performing expediting duties.  Defs.' Razo Dep. at 88:6-11.  By 10:00 a.m., Plaintiff

13   asked Gutierrez "is this going to be this way, you know?"  *Id.* at 90:13-21.  "[I]f this is going to

14   continue," Plaintiff stated, "I would rather be laid off."  *Id.* at 91:5-7; *see also* Morgan Decl., Ex. I

15   at TIMEC000587.  TIMEC laid Plaintiff off at the end of that day.  UF Nos. 28-29.

16           On August 6, 2014, TIMEC offered Plaintiff a position with the title of craft foreman, at

17   the $35/hour rate.  UF No. 30.  Plaintiff rejected the offer.  UF No. 31.  He went to work for

18   another company as a materials expediter approximately one month after leaving TIMEC.  Def.'s

19   Razo Dep. at 9:17-10:1.

20   **G.    TIMEC's Processing of Leave Requests**

21           The parties dispute whether and when TIMEC sent Plaintiff paperwork regarding FMLA

22   leave for his leaves of absences.  Kelly Teel, TIMEC's HR representative in Houston, Texas,

23   testified she sent "all the appropriate paperwork" to Plaintiff in connection with his three leaves.

24   *See* Defs.' Teel Dep. at 59:9-60:25; Avloni Decl., Ex. 11 (Pl.'s Teel Dep.) at 67:20-25, 122:12-17.

25   Plaintiff testified he does not remember receiving any paperwork from Teel.  Pl.'s Razo Dep. at

26   182:15-25.  Defendants argue Teel testified Plaintiff on April 14, 2014 signed for delivery of the

27   first package Teel sent him.  *See* Mot. at 9 (citing Defs.' Teel Dep. at 59:22-60:13).  The passage

28   of the Teel Deposition they cite does not support their statement.

United States District Court
Northern District of California

1    Plaintiff submitted Work Status Reports from his physicians to TIMEC in connection with

2 his leave requests, but there is no evidence Plaintiff completed any other paperwork relating to his

3 requests for FMLA leave.  *See* Defs.' Teel Dep. at 59:2-8; *see also* Pl.'s Morgan Dep. at 21:6-22;

4 Pl.'s Razo Dep. at 65:7-17, 73:25-74:6, 159:8-16, 233:1-6.

5    Carlos Cerda testified it was his understanding that the HR Department "attempts to

6 contact or contacts the employee to let them know that they must return the forms within a 15-day

7 period to be designated FMLA."  Pl.'s Cerda Dep. at 82:21-83:5.  TIMEC did not contact Plaintiff

8 to let him know he must return the forms within a 15-day period and did not otherwise contact him

9 regarding FMLA leave.  UF Nos. 12 (first leave) and 21 (third leave); *see also* Defs.' Teel Dep. at

10 57:16-58:18 & Ex. 84 (Teel sent letter to Razo on July 18, 2014 regarding his second leave,

11 explaining TIMEC was denying his request for FMLA leave for failure to timely return medical

12 certification).

### H.    Koutz is Promoted

14    Between September 2014 and the end of that year, TIMEC hired additional employees to

15 address an increase in workload.  Pl.'s Gutierrez Dep. at 85:19-86:16 (gradually added six

16 employees[4], including for purposes of responding to a fire at the refinery in November 2014).  In

17 December 2014 or January 2015, Gutierrez promoted Koutz to general foreman in the on-the-run

18 division.  Pl.'s Koutz Dep. at 26:10-27:14.  Until that time, he was paid as a craft foreman.

### I.    Plaintiff's Lawsuit

20    Plaintiff filed his initial complaint on July 24, 2015.  Dkt. No. 1.  He filed the FAC on

21 September 24, 2015.  The FAC asserts claims against TIMEC and Transfield Ltd. for violations of

22 the FMLA, 29 U.S.C. §§ 2601 et seq., the California Family Rights Act ("CFRA"), Cal. Gov't

23 Code §§ 12945.2 et seq., the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't

24 Code §§ 12940 et seq., and finally, a constructive discharge claim.

25

26 ───────────────────
[4] Plaintiff argues TIMEC hired "*dozens of employees*" for the on-the-run group "within four

27 months of Plaintiff's lay off."  Opp'n at 13 (emphasis added).  This is a gross mischaracterization
of the deposition testimony Plaintiff cites in support of his statement.  *See* Gutierrez Dep. at 86:7-

28 13 (Q: "So over four months, you've had all those individuals added?"  A: "Yes.  For Eric House,
Jacob Walker, Matt Woolums, Shane Steffan, Andy Cortinas, Anthony Weber.").

1

**LEGAL STANDARD**

2       Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

3   that there is "no genuine dispute as to any material fact and [that] the movant is entitled to

4   judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment

5   bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that

6   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

7   317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v.*

8   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is

9   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

10      Where the moving party will have the burden of proof on an issue at trial, it must

11  affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

12  party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

13  the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

14  pointing out to the district court that there is an absence of evidence to support the nonmoving

15  party's case.  *Celotex*, 477 U.S. at 324-25.

16      If the moving party meets its initial burden, the opposing party must then set forth specific

17  facts showing that there is some genuine issue for trial in order to defeat the motion.  Fed. R. Civ.

18  P. 56(c); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most

19  favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir.

20  2004).  However, it is not the task of the Court to scour the record in search of a genuine issue of

21  triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The Court "rel[ies] on the

22  nonmoving party to identify with reasonable particularity the evidence that precludes summary

23  judgment."  *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

24  Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine

25  issue of fact, where the evidence is not set forth in the opposing papers with adequate references

26  so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031

27  (9th Cir. 2001).  If the nonmoving party fails to make this showing, the moving party is entitled to

28  a judgment.  *See Celotex*, 477 U.S. at 323.

United States District Court
Northern District of California

11

United States District Court
Northern District of California

**DISCUSSION**

Defendants move for summary judgment as to each of Plaintiff's claims.  In the following analysis, the Court first examines whether a genuine issue of material fact exists that Transfield Ltd. was Plaintiff's employer.[5]  Second, the Court considers whether Plaintiff's state law claims are preempted.  Finally, the Court assesses whether a genuine issue of material fact exists as to Plaintiff's remaining claims.

**A.     Employer Relationship with Transfield Ltd.**

For the sake of clarity, the Court refers to the three Transfield entities discussed in this Order as follows:  Defendant Transfield Services, Ltd. ("Transfield Ltd."); Transfield Services America Inc. ("Transfield Inc."); and Transfield Services ("dba Transfield").

Transfield Ltd. argues Plaintiff cannot show it was Plaintiff's employer, which would be dispositive as to his claims against it because Plaintiff can only pursue the claims he asserts in this action against his employer.  Mot. at 23-27; *see* Opp'n at 34 (conceding Plaintiff may only pursue FMLA and FEHA claims against his employer; also conceding that TIMEC—not Transfield Ltd.—is presumed to be Plaintiff's employer under these two statutes); *Dudley v. Dep't of Transport.*, 90 Cal. App. 4th 255, 261 (2001) (employer relationship element of CFRA claim); *Bragg v. East Bay Reg'l Park Dist.*, 2003 WL 23119278, *5 (N.D. Cal. Dec. 29, 2003) (employer relationship element of constructive discharge claim); *see also* Johnston Decl. ¶ 3 (no evidence that Transfield Ltd. played any role in employment decisions related to Plaintiff).

It is undisputed that during 2013-14, Transfield Ltd. was an Australian publicly-traded holding company (UF No. 35), and eighth-tier parent of TIMEC (Tegtmeier Decl. ¶ 2 & Ex. A (organizational chart)).  There is a "strong presumption" that Transfield Ltd., as TIMEC's parent company, is not Plaintiff's employee.  Mot. at 24 (citing *Laird v. Capital Cities/ABC, Inc*., 68 Cal. App. 4th 727, 737 (1998), *overruled on other grounds by Reid v. Google*, 50 Cal. 4th 512 (2010)).  Plaintiff responds that Transfield Ltd. nonetheless may be held liable for the discriminatory acts of

---

[5]  Although Defendants specifically refer only to the FEHA and FMLA claims in the section of their Motion devoted to this argument, counsel clarified at the hearing that Transfield Ltd. moved for summary judgment on all claims based on the ground it was not Plaintiff's employer.  Plaintiff did not object to the clarification at the hearing.

its subsidiary under the "integrated enterprise" theory.  Opp'n at 34-35 (analyzing Transfield

Ltd.'s liability under FEHA and FMLA by examining four "integrated enterprise" factors that are

identical to those discussed in *Laird*, 68 Cal. App. 4th at 737).[6]

"[A]n employee who seeks to hold a parent corporation liable for the acts or omissions of

its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy

burden to meet[.]"  *Laird*, 68 Cal. App. 4th at 737.  Because corporate entities are presumed to

exist separately, "the corporate existence form will be disregarded only when the ends of justice

require this result."  *Id*.  Courts evaluating whether a parent entity should be considered an

"employer" under the integrated enterprise test consider the extent to which the four *Laird* factors

apply: (1) centralized control of labor relations; (2) interrelation of operations; (3) common

management; and (4) common ownership or financial control.  *Id*.

      1.    <u>Centralized Control of Labor Relations</u>

"The critical question is, [w]hat entity made the final decisions regarding employment

matters related to the [claimant]? . . . To satisfy the control prong, a parent must control the day-

to-day employment decisions of the subsidiary."  *Id*. at 738 (internal quotation marks and citations

omitted).  In *Laird*, the subsidiary's control over its own employment decisions was "essentially

undisputed."  *Id*. at 738-39.  The evidence showed that all of the plaintiff's employment

paperwork designated her employer to be the subsidiary, not the parent; employee handbooks the

plaintiff received explicitly stated she was a subsidiary employee; the subsidiary provided all of

_____

[6] It is unclear whether the integrated enterprise test is even applicable in this case.  This test "does not determine joint liability... but instead determines whether a defendant can meet the statutory criteria of an 'employer' for Title VII applicability[,]" specifically the requirement that an employer have 15 or more employees.  *Anderson v. Pac. Maritime Ass'n*, 336 F.3d 924, 928-29 (9th Cir. 2003) (9th Cir. 2013).  An employee asserting a Title VII claim against an employer with less than 15 employees may use the integrated enterprise test to show that, together, the employers meet the 15-employee minimum.  *Id*.  But where a plaintiff's employer has at least 15 employees, "the integrated enterprise test is inapplicable."  *Id*.; *see also Johnson v. United Continental Holdings, Inc.*, 2013 WL 1758760, at *2 (N.D. Cal. Apr. 24, 2013) (quoting same).  The test is also applied for the purpose of determining whether a defendant is an "employer" under FEHA. *See Kenny v. Regis Corp.*, 2008 WL 686710, at *3 (N.D. Cal. Mar. 10, 2008) (integrated enterprise test "most often applied in context of claims arising under Title VII and the California" FEHA) (quotation omitted).  There is no evidence as to the number of employees TIMEC employs, and the parties both proceed under the assumption that the integrated enterprise test provides the proper analytical framework.  The Court therefore analyzes the issue as requested by the parties.

United States District Court
Northern District of California

her W-2 forms; and the plaintiff even admitted in her deposition that the supervisors who fired her were employees of the subsidiary, not the parent company.  *Id*.  The *Laird* Court held that, given the circumstances, this factor weighed greatly in favor of the defendant parent company.  *Id*.

Similarly to *Laird*, Transfield Ltd. introduced evidence that it exercised "no control over [TIMEC's] operations, including the manner in which work is assigned and carried out, TIMEC's payroll, the hiring, firing and discipline of employees, or employee benefits."  Tegtmeier Decl. ¶ 5; *see also* Brown Decl. ¶ 6 ("During my employment with TIMEC, Inc., including in 2014, Transfield Services Ltd. has played no role in the day-to-day operations of the company and is not involved in the employment decisions of TIMEC Company, Inc.").  It also is undisputed that during 2013-2014, Transfield Ltd. did not have a U.S. taxpayer identification number, did not employ any individuals in the U.S., and did not provide any W-2 statements.  UF No. 36.

To establish a genuine issue of fact exists as to this prong of the *Laird* test, Plaintiff first argues Transfield Services, Ltd. "created unified policies for all of its employees, by relying on a centralized human resources department to enforce and uphold these shared policies."  Opp'n at 36.  He does not, however, cite any portion of the record to support this statement, and the evidence he identifies in the remainder of this section of his brief does not support his argument.  Aside from that argument, Plaintiff relies entirely upon the testimony of Kelley Cook, an HR manager for Transfield Inc.  *See* Opp'n at 36.  Setting aside whether Cook has sufficient personal knowledge to testify about the corporate relationship between Transfield Ltd. and TIMEC, her testimony fails to create a genuine dispute about Transfield's control of TIMEC's labor relations:

o Cook testified "Transfield Services" acquired TIMEC in the mid-2000s, and all the branding of the company was changed to "Transfield" including on emails, forms, uniforms, and signs: "[t]o the client and to the public and to the employees, we were all Transfield now."  Pl.'s Cook Dep. at 193:18-194:13.  But Plaintiff fails to attach the portion of the deposition where Cook clarifies the "Transfield" at issue in the rebranding was Transfield Inc.—not Transfield Ltd.  Johnston Decl., Ex. L (Defs.' Cook Dep.) at 198:8-199:22 ("It was very clear to me it was Transfield Service[s] American Inc.").  To the extent this testimony establishes anything about whether another entity controls

14

TIMEC's labor relations, it does so about Transfield Inc., not Transfield Ltd.

o   Plaintiff contends Transfield Ltd.'s American employees handled severance agreements "for the entire company."  Opp'n at 36 (citing Pl.'s Cook Dep. at 16:20-25).   But Cook only testified she "did all the severance agreements" when the "parent company" relocated employees in Australia or New Zealand to the United States.  She never specifically identifies the parent company, and it is not clear whether she is acting at the behest of her employer (Transfield Inc.) or for the unnamed parent company.

o   Plaintiff also argues Transfield Ltd. maintains a whistleblower hotline for its employees worldwide, and would initially investigate the matter before handing it to its subsidiaries to complete the investigation.  Opp'n at 36.  But the passage of Cook's deposition Plaintiff relies on merely describes how an unidentified employee of an unidentified company called "the whistleblower line . . . in Australia" to make a complaint, which "kicked up an investigation" by "outside counsel."  Pl.'s Cook Dep. at 91:21-92:5.  Cook never identifies Transfield Ltd. as the Australian entity she is discussing, never identifies "outside counsel," and at no point testifies Transfield Ltd. "handed the investigation" to its subsidiaries.  This testimony is insufficient to create a genuine disputed issue of fact about Transfield Ltd.'s involvement in the hotline, much less its control over TIMEC.

o   Finally, Plaintiff represents Cook testified that "Philip Wratt's office was directly responsible for the pay adjustment Plaintiff received on his return to work in 2014."  Opp'n at 36 (citing Pl.'s Cook Dep. at 139:25-140:7).  Plaintiff argues Wratt is "an executive of Transfield Services, Ltd. [who] also maintains a high degree of control over the American Operations of TIMEC Company, Inc."  Opp'n at 35.  Plaintiff does not support this statement with any evidence.  *See id*.  Additionally, the pages of Cook's deposition Plaintiff cites to suggest Wratt's office was responsible for Plaintiff's pay adjustment do not mention Wratt, his office, or Plaintiff's pay adjustment.  *See* Cook Dep. at 139:25-140:7 (Cook contacted "Houston" and told "Donald" they had to find Plaintiff "another position.").  The evidence actually establishes that Holt and Chevron's Sullenger were "directly responsible" for Plaintiff's pay adjustment in May 2014.

None of the testimony above creates a genuine issue disputing the evidence that Transfield Ltd. exercised no control over TIMEC's operations, including payroll functions; the hiring, firing, or disciplining of employees; or employee benefits.  *See* Tegtmeier Decl. ¶ 5; Brown Decl. ¶ 6.  This factor weighs in favor of Transfield Ltd.

> 2.    Interrelation of Operations

To make a sufficient showing of "interrelation of operations," Plaintiff must show the parent company has exercised control over the subsidiary "to a degree that exceeds the control normally exercised by a parent corporation." *Laird*, 68 Cal. App. 4th at 738 (internal quotation marks and citation omitted).  Plaintiff must do more than demonstrate that the parent merely "benefits from the subsidiary's work" because otherwise "such a showing would create a triable issue of material fact in every case." *Id*.  In *Laird*, the court found the plaintiff had failed to introduce evidence to satisfy this prong, and provided examples of evidence that would help to show that the operations of the parent and subsidiary were interrelated:  "She did not show, for instance, that [the parent corporation] kept [the subsidiary's] books, issued its paychecks, or paid its bills[,]" or that "the two operations had shared employees, . . . headquarters, or office space." *Id*. at 739.

As described above, Tegtmeier and Brown declare based on their personal knowledge that during the relevant time period Transfield Ltd. did not exercise day-to-day control over TIMEC operations or employment decisions.  Tegtmeier Decl. ¶ 5: Brown Decl. ¶¶ 5-6.  Defendants also produced evidence that TIMEC, not Transfield Ltd, paid Plaintiff.  Wiedmer Decl. ¶¶ 4, 8 & Exs. A, D.

Instead of showing the type of evidence highlighted by the *Laird* Court, Plaintiff attempts to create a genuine issue of fact through argument, and by relying on the following:

> o   Plaintiff cites a link to a 2015 Transfield Services Annual Report and references an "Ironshore Indemnity Insurance Contract" for the proposition that "Transfield [Ltd.] clearly claims the income of its subsidiary as its own."  Opp'n at 36-37.  Plaintiff's counsel does not attach either document to her declaration, much less authenticate the documents or lay an adequate foundation for her characterization of the documents.

United States District Court
Northern District of California

Plaintiff's counsel's representation and/or interpretations of these documents are not sufficient to create a genuine issue of fact as to whether Transfield Ltd. and TIMEC commingled funds in 2013 or 2014 or had an interrelation of operations.

o   Plaintiff represents Brown testified that "managers at the highest level of the parent corporation were board members and directors of the subsidiary, and TIMEC employees reported directly to these managers."  Opp'n at 36 (citing Pl.'s Brown Dep. at 49:15-51:10).  That grossly mischaracterizes Brown's testimony.  Brown did not testify about "managers at the highest level of the parent corporation" or about "board members"; he testified he met regularly with his direct supervisor, Mr. Machon, and that he had no schedule for meeting with Mr. Wratt.

o   Finally, Plaintiff argues the fact that Transfield Ltd. and TIMEC "share[d] a workforce, with American [HR] employees being responsible for the relocation and remuneration of international employees when the company so required."  Opp'n at 37 (citing Pl.'s Cook Dep. at 16:12-17).  The Court already addressed this testimony above, and finds it also fails to create a genuine dispute of fact that Transfield Ltd. and TIMEC shared a workforce.

Plaintiff has offered no competent evidence to establish a genuine issue of fact that the two entities' operations were interrelated beyond the degree normally exercised by a parent corporation.  Plaintiff certainly did not introduce evidence sufficient to show that Transfield Ltd. "kept [TIMEC's] books, issued its paychecks, or paid its bills," or that "the two operations share employees, . . . headquarters, or office space" (*Laird*, 68 Cal. App. 4th at 739), or of other similar arrangements.  This factor weighs in favor of Defendants.

### 3.   Common Management

The *Laird* court held the plaintiff had "offered no evidence that anyone served as a manager of both corporations" and thus had failed to show the parent and subsidiary had any degree of common management.  *Id.* at 740. The court also reasoned Laird should have introduced evidence that at least one manager of the parent corporation made or influenced a "day-to-day managerial decision" of the subsidiary, and further noted, "[n]or did [Laird] show that any

17

1   manager from either corporation was ever transferred to the other." *Id.*

2          Tegtmeier declares that during the relevant period, TIMEC and Transfield Ltd. "had no

3   board members in common and did not share any management."  Tegtmeier Decl. ¶ 5.  Plaintiff

4   does not dispute this fact.  *See* UF No. 39 ("During 2013-2014, TIMEC and Transfield Services,

5   Ltd. had no board members in common and did not share any management.").  Moreover, in his

6   Opposition, Plaintiff offers no evidence in support of this prong of the *Laird* test.  *See* Opp'n at 35

7   (arguing without any evidentiary support that Transfield Ltd. and TIMEC "share board members

8   and executives"; that Transfield Ltd.'s secretary serves on most of its subsidiaries' boards; and

9   that a member of Transfield's executive board is the president of Transfield's American operations

10  and works directly with TIMEC officers).  Plaintiff further argues that Brown testified that he

11  "regularly met" with Philip Wratt, "an executive of Transfield Services, Ltd." "to discuss safety

12  issues and other day-to-day details of TIMEC's operations."  Opp'n at 35.  This is another mis-

13  characterization of Brown's testimony: Brown did not testify Mr. Wratt was an executive of

14  Transfield Services, Ltd.; did not testify meeting with Wratt to discuss any particular topics; and

15  did not testify about the frequency of such meetings.  *See* Pl.'s Brown Dep.  Consequently, this

16  factor also weighs in favor of Defendants.

17         4.     Common Ownership

18         In his declaration, Tegtmeier describes the ownership structure of the various Transfield

19  entities, and explains that TIMEC was owned by an operating company that was in turn owned by

20  Transfield Inc.; and that there were several layers of ownership between Transfield Inc., and

21  Transfield Ltd.  Tegtmeier Decl. ¶ 2 & Ex. A.  The mere fact of common ownership or financial

22  control, without more, is insufficient to raise a genuine issue of fact under the integrated enterprise

23  test.  *Laird*, 68 Cal App. 4th at 740.

24         5.     Summary

25         Construing the evidence in favor of the non-moving party, the Court concludes that

26  Plaintiff has failed to establish a genuine issue of material fact exists regarding the existence of an

27  employment relationship with Transfield Ltd.  The Court accordingly grants summary judgment to

28  Transfield Ltd. on Plaintiff's FMLA, CFRA, FEHA, and constructive discharge claims.

**B.     Preemption by the LMRA**

Defendants argue Plaintiff's state law claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), because the claims require the Court to interpret the Collective Bargaining Agreement ("CBA") governing TIMEC's relationship with the union to which Plaintiff belonged.  *See* Mot. at 12-13.  Section 301 preempts state law claims "founded directly on rights created by [CBAs], and claims substantially dependent on analysis of [a CBA]." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).  "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Cramer v. Consol. Freightways Inc*., 255 F.3d 683, 691 (9th Cir. 2001) (en banc).  A state law claim is "substantially dependent" on a CBA if it "cannot be resolved without interpreting the applicable CBA."  The fact a CBA will be "consulted in the course of state law litigation does not require preemption."  *See id*. at 690-91; *see also Detabali v. St. Luke's Hosp*., 482 F.3d 1199, 1203 (9th Cir. 2007) ("A reference to or consideration of the terms of a collective bargaining agreement is not the equivalent of interpreting the meaning of the terms." (internal quotation marks and citation omitted)).

It is undisputed that a CBA governed the terms of Plaintiff's employment with TIMEC, but as the Court makes clear below, Plaintiff's claims can be resolved without interpreting the CBA, and accordingly, Plaintiff's state law claims are not preempted under the LMRA.

**C.     FEHA Claims**

   1.     Legal Standards

California's FEHA makes it unlawful for an employer to discriminate against a person "in compensation or in terms, condition, or privileges of employment" "because of" age, physical or mental disability, or medical condition.  Cal. Gov't Code § 12940(a).  Plaintiff alleges Defendants discriminated against him on the basis of his age, physical disability, and mental disability. Defendants, however, argue there is no evidence in the record to support this claim, highlighting Plaintiff's testimony that he never heard anyone at TIMEC make any statements about his age or his eye surgery and did not feel treated unfairly either by Holt or Gutierrez during his employment at TIMEC.  *See* Defs.' Razo Dep. at 34:15-25, 36:16-37:20, 38:3-38:19.  Based on this and other

19

1   testimony, they argue Plaintiff cannot set forth evidence establishing he (1) suffered

2   discrimination while employed at TIMEC; (2) was performing his job satisfactorily; (3) was

3   disabled or regarded as being disabled; and (4) suffered adverse employment actions because of

4   discrimination.  *See* Mot. at 17-21.  Therefore, Defendants argue, Plaintiff cannot establish several

5   elements of his FEHA claims.

6          Plaintiff may establish his FEHA discrimination claims using either direct or indirect

7   evidence.  Direct evidence "proves the fact of discriminatory animus without inference or

8   presumption" and "typically consists of clearly sexist, racist, or similarly discriminatory

9   statements or actions by the employer."  *Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1058 (N.D.

10  Cal. 2011) (analyzing discrimination claims, including FEHA claims) (citations omitted).  "[V]ery

11  little direct evidence of the employer's discriminatory intent [is needed] to move past summary

12  judgment," but it takes more than a vague statement to survive summary judgment.  *Id.* at 1060.

13  Moreover, "[w]here a comment is not directly tied to an adverse action, it cannot be considered

14  direct evidence of discrimination."  *Id.*  If Plaintiff cannot point to any direct evidence, this Court

15  must analyze the claim under the three-stage burden-shifting framework laid out in *McDonnell*

16  *Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354

17  (2000) (California courts have adopted three-stage *McDonnell Douglas* burden-shifting test for

18  trying discrimination claims based on disparate treatment); *see also Cozzi*, 787 F. Supp. 2d at 1057

19  (applying *McDonnell Douglas* test to FEHA claims at summary judgment).  Under *McDonnell*

20  *Douglas*, if Plaintiff establishes a prima facie case of discrimination, the burden shifts to

21  Defendants to articulate a legitimate, non-discriminatory reason for the employment action; if

22  Defendants satisfy that burden of production, then the burden shifts again to Plaintiff, who must

23  then demonstrate the reason is pretextual.  *See id.* (both).  Plaintiff must offer "specific and

24  substantial" circumstantial evidence of pretext.  *Krylova v. Genentech Inc.*, 37 F. Supp. 3d 1156,

25  1166 (N.D. Cal. 2014) (a plaintiff cannot defeat summary judgment on ADEA and FEHA claims

26  simply by establishing prima facie case of discrimination; he must produce "specific, substantial

27  evidence of pretext" (quotation omitted)).

28

United States District Court
Northern District of California

2.      Age Discrimination Claim

To make a prima facie age discrimination case under FEHA, Plaintiff must show (1) he was at least 40 years old; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) evidence, such as replacement by a significantly younger employee with similar or inferior qualifications, suggests a discriminatory motive for the employment action.  *Guz*, 24 Cal. 4th at 355; *see also Diaz v. Eagle Produce Ltd. P'ship*., 521 F.3d 1201, 1207 (9th Cir. 2008) ("Generally, an employee can satisfy the last element of the prima facie case only by providing evidence that he or she was replaced by a substantially younger employee with equal or inferior qualifications").  "While the plaintiff's prima facie burden is not onerous . . ., he must at least show actions taken by the employer from which one can infer, if such actions remained unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion[.]"  *Guz*, 24 Cal. 4th at 355 (internal quotation marks and citations omitted).

Plaintiff establishes a genuine issue exists as to the first three prongs of his prima facie case for age-discrimination.  First, it is undisputed that Plaintiff was over 75-years old when these events took place.  Second, it is undisputed Plaintiff received no written negative performance evaluations while he was a craft or general foreman, and Plaintiff has offered evidence that his supervisors evaluated his performance as satisfactory or better, up to and including on his last day of work.  Holt also thought Plaintiff was performing his duties satisfactorily, and Sullenger testified he had "great respect" for Plaintiff and immediately approved Holt's request to give Plaintiff a raise after his first demotion.  At the least, Plaintiff has established a genuine issue of fact exists that he was qualified as general foreman of the welder's group.  Third, Plaintiff has offered evidence of adverse employment actions, including (1) his demotion from general foreman to craft foreman in April 2014; (2) the reduction in his hourly pay rate in April 2014 and again in August 2014; (3) after his reinstatement as general foreman, Gutierrez's request for him to accept a lesser position as material expediter; and (4) TIMEC's offer to "reinstate" Plaintiff in a position of craft foreman on August 6, 2014.  These demotions in title, pay, and responsibility constitute adverse employment actions.  *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1052-54

1    (2005) ("adverse employment actions" under FEHA include not only "'ultimate employment

2    actions' such as termination or demotion, but also the entire spectrum of employment actions that

3    are reasonably likely to adversely and materially affect an employee's job performance or

4    opportunity for advancement in his or her career.")

5           Plaintiff, however, has not established a genuine issue of fact exists regarding the fourth

6    element: discriminatory motive.  Plaintiff identifies both direct and indirect evidence of

7    discriminatory motive, but neither creates a genuine dispute whether TIMEC's conduct was

8    motivated by discrimination.

9                    i.    *Direct Evidence*

10          Plaintiff contends there is direct evidence of discrimination based on his age.  He states he

11   heard "from other people"—including "Joseph"—on "other crews" that "they" "want[ed] to get

12   rid of the old group."  Opp'n at 13; Pl.'s Razo Dep. at 77:10-24, 80:13-16.  This evidence is

13   insufficient to demonstrate discriminatory animus.  First, Plaintiff's testimony is incompetent

14   summary judgment evidence.  Plaintiff could only recall "Joseph's" first name and could not

15   otherwise identify him or any of the other people who heard these statements.  *Id*.  In any event,

16   the statements are inadmissible hearsay, as Plaintiff seeks to use these out of court statements for

17   the truth of the matter asserted, i.e., that TIMEC discriminated against employees based on their

18   age (*see* Fed. R. Evid. 801), and there is no indication Plaintiff will be able to submit admissible

19   evidence to introduce these statements at trial.  *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973

20   (9th Cir. 2010) ("While the evidence presented at the summary judgment stage does not yet need

21   to be in a form that would be admissible at trial, the proponent must set out facts that it will be

22   able to prove through admissible evidence." (citations omitted)).

23          Second, the statements do not create a genuine dispute of fact because Plaintiff establishes

24   no foundation for his belief the original statement had anything to do with age.  On the contrary,

25   Plaintiff testified the "old group" did not refer to older employees, but to "the original crew" that

26   had worked at the site.  Defs.' Reply Razo Dep. at 79:3-10.[7]  Given the context in which Plaintiff

27

28   ───────────────
     [7] The Court notes that Plaintiff's counsel attached pages 77 and 80 of the deposition to her
     declaration, she failed to attach page 79—the page where Plaintiff clarifies what he believes was

United States District Court
Northern District of California

described them, such ambiguous comments do not constitute evidence of discrimination.  *See, e.g.*, *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (employer's statement he wanted to "get rid of all the 'old timers'" did not constitute evidence of discrimination because it was "ambiguous" in that it could "refer as well to longtime employees or to employees who failed to follow directions as to employees who were over 40"); *Cozzi*, 787 F. Supp. 2d at 1058-59 (comment that employer wanted "fresh faces" did not constitute evidence of direct discrimination where plaintiff offered no evidence employer ever stated she wanted "younger" employees, remarks did not lead to "inescapable conclusion" that employer wanted younger employees: "Age and years of service are distinct, and to base a decision on fewer years spent in the Department ('a fresh face') is not necessarily an age-based comment."); *Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (N.D. Cal. 2007) (employer wanting to hire someone "with more energy" is not "necessarily reflective of age discrimination").  Plaintiff also offers no evidence that the statements were made by a decision-maker contemporaneously with the adverse employment actions, or tied to an employment decision.  As such, they do not constitute evidence of discrimination.  *See Cozzi*, 787 F. Supp. 2d at 1060; *see also Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990) (isolated, "stray remark" does not provide evidence of discrimination).

As the Court finds that Plaintiff did not provide direct evidence of discrimination based on age or disability, the Court now turns to whether Plaintiff has provided sufficient evidence to establish a prima facie case under the burden-shifting analysis.

> ii.      *Indirect Evidence – Burden Shifting Analysis*

As discussed above, there is no direct evidence showing Defendants took any adverse employment actions based on Plaintiff's age.  Consequently, Plaintiff seeks to show a younger employee replaced him.  Specifically, Plaintiff argues 31-year old Koutz replaced him as general foreman of the welder's group in the on-the-run group in August 2014.[8]  *See* Opp'n at 11-12.  But

meant by "the old group."  *See* Pl.'s Razo Dep.

---

[8] Plaintiff argues TIMEC brought in another general foreman to replace him as early as April 2014.  *See* Opp'n at 11.  In an April 2014 email to Sullenger, Holt indicates that TIMEC brought

1    the evidence does not show Koutz replaced him as general foreman of the welder's group or that

2    Koutz had similar or inferior qualifications.  *See Diaz*, 521 F.3d at 1207.

3         The unrebutted evidence shows that when Gutierrez reorganized the on-the-run group in

4    July 2014, he split up the welders that had been in that group to attach them to groups of

5    pipefitters within the general maintenance division.  He eliminated the general welding foreman

6    position Plaintiff had held and added a craft piping foreman position to supervise teams

7    comprising both pipefitters and welders.  Holt testified most pipefitting foremen could manage

8    both pipefitters and welders, so there was no need to have a separate welding foreman to supervise

9    the 5-6 welders that had comprised the former on-the-run welder's group.  Gutierrez hired Koutz

10   as a craft foreman to supervise mixed teams of pipefitters and welders—not as general foreman for

11   the welders in the on-the-run group.  Koutz was hired as, and paid at the rate of, craft foreman.

12   *See, e.g.*, Defs.' Holt Dep. at 117:5-8; Avloni Decl., Ex. 6 (PAN showing Koutz change in pay,

13   new title, and new position).  Plaintiff's testimony that other individuals (including Gutierrez),

14   told him "somebody else had [his] spot" in August 2014 (Opp'n at 11-12) is hearsay to the extent

15   it is being offered to prove the truth of the matter asserted, and lacks foundation.  Plaintiff's

16   contention that the title and rate were given to Koutz "[t]o not make the replacement so obvious"

17   (Opp'n at 12) is purely speculation.  This is all the more so when Koutz was not promoted to

18   general foreman and paid at that rate until approximately six months later.

19        The unrebutted evidence also shows that Koutz's qualifications for the position were not

20

21   on another foreman.  While this statement may qualify as an opposing party's statement, and thus
     would not constitute hearsay (*see* Fed. R. Evid. 801(d)(2)), neither party has offered evidence to
22   show who TIMEC brought on as general foreman to the on-the-run group at that time, nor
     evidence of whether such a person was younger or less qualified that Plaintiff.  It is undisputed
23   Koutz did not join the maintenance division in any capacity until July or August 2014. Thus,
     Plaintiff has not established a prima facie case that the April 2014 demotion was motivated by
24   discrimination.  Defendants' argument that any claims based on the April 2014 demotion/
     reduction in pay are barred by the statute of limitations because Plaintiff filed a claim with the
25   Department of Fair Employment and Housing ("DFEH") over one year later (Mot. at 19; Reply at
     7 n.2) therefore is moot.  The Court also notes both parties conflate the events of April and August
26   2014.  *See* Mot. at 6-7 (arguing Gutierrez's conversation with Daniel Bernardy (another client
     contact at Chevron) in July 2014, led Gutierrez to recommend Razo be demoted to craft foreman
27   in April 2014); Opp'n at 11 (arguing April 2014 email from Holt supports contention other general
     foreman position existed after August 2014).

28

United States District Court
Northern District of California

similar or inferior to Plaintiff's.  Koutz had been the general piping foreman in another TIMEC

division, and also had extensive welding experience.  Even if Plaintiff had pipefitting experience

as late as 2000 and had been general *welding* foreman, no evidence shows he had the experience to

be piping foreman or to supervise multiple teams of both pipefitters and welders.  Indeed, the

performance evaluation from 2000 that Plaintiff relies upon to establish he had pipefitting

experience shows that all the "supervisory factors (foreman and above)" are crossed out as

inapplicable.  *See* Avloni Decl., Ex. 23.  Plaintiff thus has not created a disputed issue of fact that

TIMEC's conduct was animated by a discriminatory motive.

### 3.   Disability Discrimination Claim

To make a prima facie disability discrimination case under FEHA, Plaintiff must show he

(1) had a disability; (2) was qualified for the position sought; (3) suffered an adverse employment

action; and (4) his disability was a motivating reason for the adverse action.  *See Gardner v. City

of Berkeley*, 838 F. Supp. 2d 910, 922 (N.D. Cal. 2012) (citing *Guz*, 24 Cal. 4th at 354-55).  FEHA

lists several definitions of "physical disability," including being regarded or treated as having any

physical condition that makes a major life activity difficult.  Cal. Gov't Code § 12926(m)(4)

(2016).  Under FEHA, working is a major life activity.  *Id.* § 12926(m)(1)(B)(iii) (2016).

Plaintiff has not established a prima facie case of disability discrimination.  Plaintiff

contends he was disabled because his "eyesight began to deteriorate" (FAC ¶ 16) and/or his

"eyelids were closing over."  Pl.'s Sep. Stmt. at 135 (citing Holt Dep.), Dkt. No. 65.  Plaintiff

argues the condition impaired his vision and interfered with the major life activity of seeing.

Opp'n at 27.  But "[n]ot every 'difficulty' is a disability" under FEHA, "some are injuries that do

not rise to the level of a disability."  *Naderi v. Sophos Inc.*, 2016 WL 4398287, at *15 (N.D. Cal.

Aug. 18, 2016) (granting summary judgment to employer where employee did not provide

evidence knee injury limited his ability to work, testified he could perform his duties after his

injury, and never took time off from work after his injury: "The fact that Naderi suffered injury

and underwent surgery is not enough; he must show that his disability actually interfered with his

employment."); *Leatherbury v. C&H Sugar Co.*, 911 F. Supp. 2d 872, 880-81 (N.D. Cal. 2012)

(no prima facie showing where plaintiff offered evidence he had osteoarthritis in knees that caused

United States District Court

Northern District of California

25

1  him pain, but did not show his "legitimate physical problems" "actually interfered" with ability to

2  work: examinations cleared him for work; plaintiff completed job successfully each day; and

3  supervisors critiqued him for knowledge and communication but not his physical inabilities).

4        Plaintiff has not identified any evidence that his eye condition actually limited his seeing

5  or with his employment. *See* Cal. Gov't Code § 12926(m)(1)(B) (2016). Plaintiff identified no

6  evidence in the record establishing a genuine issue of fact that his eye condition limited his ability

7  to see or to work. *See generally*, Opp'n. He worked right up to the date of his first and second

8  surgeries, and returned to work after he was healed from the surgeries. The Work Status Reports

9  he produced indicate he needed time off for the surgeries and to recover from the surgeries—not

10  for the condition he experienced before the surgeries. Plaintiff does not testify about the impact

11  his eye condition had on his ability to see or work; does not provide a declaration explaining how

12  he was limited by his condition; and does not provide Work Status Reports even suggesting

13  Plaintiff's eye condition interferes with his sight or his ability to work (Avloni Decl., Ex. 5). *Cf.*

14  *Huck v. Kone, Inc*., 2011 WL 6294466, at *5 (N.D. Cal. Dec. 15, 2011) (plaintiff with pain and

15  reduced mobility in arm stated a cognizable FEHA disability where he offered evidence his doctor

16  recommended he use speech recognition software program and subsequently recommended

17  plaintiff take leave of absence as a result of condition). The fact Plaintiff underwent surgery in

18  connection with his eye condition does not, by itself, establish that the eye condition was

19  disabling. Plaintiff could have decided to have surgery for cosmetic reasons, or to avoid wearing

20  corrective lenses.

21        Plaintiff also has provided no evidence that TIMEC regarded him as being disabled by his

22  eye condition: there is no evidence anyone at TIMEC knew anything about his eye condition until

23  Plaintiff requested leave for the first surgery; TIMEC accommodated his request for

24  accommodation by providing him leave for the two surgeries; TIMEC allowed Plaintiff to return

25  to work in April, July, and August when he provided medical releases showing he was medically

26  cleared to work by his physician; and finally, TIMEC offered Plaintiff work as a material

27  expediter and then craft foreman in August 2014. Plaintiff simply has not provided any evidence

28  his eye condition limited his ability to work, or that TIMEC regarded his eye condition as limiting

United States District Court
Northern District of California

26

his ability to work.

In his Separate Statement of Fact, Plaintiff also appears to suggest he was disabled because of a mental condition. *See* Pl.'s Sep. Stmt. at 135 (second leave was for anxiety and depression). Plaintiff does not allege in the FAC that he took the second medical leave as a result of a mental condition; there, he alleges he took leave between his two eye surgeries because he "did not physically feel well on numerous occasions and was ordered to stay off work by his doctor." FAC ¶ 19. In his deposition, he testified he took the second leave "because he did not feel good." In the Opposition, he does not identify any mental condition as a basis for disability. *See* Opp'n at 27. Only in the Separate Statement he filed after the hearing on the Motion does Plaintiff, for the first time, contend TIMEC discriminated against him based on his mental condition. Plaintiff, however, has identified no evidence that he informed TIMEC during his employment that he was suffering from depression and anxiety. The Work Status Report placing Plaintiff off work from May 30, 2014 through July 2, 2014 did not indicate the basis for the recommendation. *See* Avloni Decl., Ex. 5 at TIMEC000380. Plaintiff "must show" TIMEC knew of his disability in order to show he was demoted or terminated because of his disability. *See Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 909 (N.D. Cal. 2015). Because there is no evidence in the record that Plaintiff indicated to anyone at TIMEC during his employment that he was suffering from a mental condition, or that anyone at TIMEC understood Plaintiff was suffering from a mental condition, he cannot show TIMEC's actions were motivated by discriminatory intent.

Plaintiff accordingly fails to state the first element of a prima facie case of disability discrimination: that he was disabled or regarded as being disabled.

### 4.   *McDonnell Douglas* Burden Shifting Analysis

Although the Court has found Plaintiff did not state a prima facie case of discrimination based either on his age or disability, the Court will apply the *McDonnell Douglas* analysis in order to fully address Plaintiff's claims. Assuming arguendo that Plaintiff has stated prima facie discrimination cases under FEHA, the burden shifts to TIMEC to articulate a legitimate, non-discriminatory reason for the adverse employment action it took in July/August 2014. TIMEC identifies two such reasons: the July 2014 reorganization eliminated Plaintiff's former position as

general foreman of the on-the-run welder's group, and Plaintiff did not have the pipe-fitting skills to take on the newly-created craft piping foreman position.  Koutz was a piping general foreman in another division of TIMEC, who did have those skills.  Gutierrez offered Plaintiff a materials expediter position because he believed based on his observations in the early part of 2014 that it was commensurate with Plaintiff's level of responsibility.  TIMEC accordingly has articulated legitimate, non-discriminatory reasons not giving Plaintiff a general foreman position in the newly reorganized maintenance group in August 2014 and for hiring Koutz for the piping foreman position.

The burden therefore shifts again to Plaintiff to demonstrate TIMEC's reasons for demoting him in August 2014 were pretextual.  Plaintiff throws in the proverbial kitchen sink to demonstrate the restructuring was pretextual.  *See* Opp'n at 10-14.  Principally, he argues he was the only general foreman who was affected by the restructuring; the efficiency and budgetary reasons for the restructuring are undermined because there was enough work to justify paying several general foremen in April 2014; the fact another general foreman was brought in to replace him in August 2014 demonstrates his position was not really eliminated; Plaintiff was equally qualified to supervise the new mixed pipefitter and welder teams; and that in restructuring the group, TIMEC violated its own policy that such decisions are made by the client, not TIMEC.  *See id.*

Plaintiff's arguments are unsupported by the evidentiary record.  For example, Plaintiff avers his "position was the only one affected by the restructuring."  Opp'n at 11 (citing Pl.'s Cook Dep. at 111:6-10).  But when asked whether "Mr. Razo's position was the only position that got eliminated in that particular facility at that time[,]" Cook answered, "*I don't know*.  I can only tell you that I don't recall there being other positions eliminated."  Pl.'s Cook Dep. at 111:6-10 (emphasis added).  Plaintiff also avers that "Mr. Brown testified that restructuring is initiate[d] by the clients, but as the testimony shows, Chevron did not initiate a restr[uctur]ing that eliminated Mr. Razo's position."  Opp'n at 29 (citing Pl.'s Taylor Dep. at 25:11-17 and Bernardy Dep. at 18:9-19:12, 21:1-9).  Plaintiff did not identify the portion of Brown's deposition he contends supports his statement, but the Court has reviewed the transcript and notes that Brown merely

testified "the client has the ultimate say how many people and who they want in the unit supporting the units and the expectation is if there will be a reduction of force, that there were a restructuring that they will include the site manager—to just make sure that we are in compliance with our company policy and our collective bargaining agreement."  Pl.'s Brown Dep. at 118:3-15.  Holt was the site manager, and he testified that he was included in (and approved) both the decision to demote Plaintiff in April 2014 and to restructure the on-the-run group in July 2014.  Brown further testified the site manager did not have to ask the client to approve a course of action relative to any kind of restructuring.  *Id*. at 118:16-21.  Bernardy also testified that Gutierrez did not need his permission to demote an employee or eliminate a position.  Bernardy Dep. at 21:1-9.  Taylor testified he did not remember Chevron "giving any orders to reduce personnel that would involve Sam Razo getting demoted."  Pl.'s Taylor Dep. at 25:11-17.  Thus, none of the evidence Plaintiff cites suggests TIMEC deviated from its policies in demoting Plaintiff.

The restructuring that eliminated Plaintiff's job did not occur until August 2014, and as discussed above, there is no evidence another, younger, general foreman was brought on in April 2014 to replace Plaintiff.  Nor did Koutz "replace" Plaintiff as general foreman of the on-the-run welder's group in August 2014, he accepted a lower-ranking craft foreman position, and supervised multiple multi-trade teams in the restructured maintenance division instead of the single team of welders Plaintiff had supervised in the on-the-run group.  Koutz was not promoted to general foreman until six months later, after Gutierrez was satisfied by his performance and there was an uptick in work that required hiring additional employees.  While Plaintiff may have had pipe-fitting experience as late as 2000, there is no evidence he ever supervised a team of pipefitters or was qualified to do so.  In contrast, Koutz had extensive welding experience and had been piping general foreman in another division immediately before accepting Gutierrez's offer to join the maintenance division.  Plaintiff has not provided evidence he was qualified as foreman of the mixed pipefitter and welder groups.  Under these circumstances, Plaintiff has failed to meet his burden of persuasion that his demotion was pretextual.  *See Sims v. WoldPac, Inc*., 2014 WL 4089201, at *3-4 (N.D. Cal. Aug. 19, 2014) (where employer offered evidence that corporate restructuring effectively eliminated plaintiff's position and new position did not match plaintiff's

1   skill set, plaintiff's subjective belief age was a factor in his termination was not sufficient to

2   demonstrate pretext); *Marques v. Bank of Am.*, 59 F. Supp. 2d 1005, 1014-15 (N.D. Cal. 1999)

3   (employee who "insisted . . . that her job was not eliminated" and that her work was transferred to

4   a younger employee in another office could not establish age discrimination because job taken by

5   younger employee "was a combination of the consumer lending done by plaintiff and the

6   commercial lending done by" another employee; "No reasonable juror could conclude that

7   plaintiff was replaced—her job was merged with another's and given to an employee deemed

8   suitable for the combined tasks.").

9           5.       Conclusion

10          Plaintiff has failed to offer "specific" and "substantial" evidence that discriminatory

11   motives animated Defendants' decision to demote him in April or August 2014.  Plaintiff has

12   failed to create a genuine issue of fact whether his April 2014 or August 2014 demotions were due

13   to age or disability discrimination.  The Court accordingly grants Defendants summary judgment

14   on Plaintiff's FEHA claims.

**C.      FMLA and CFRA Claims**

16          Plaintiff's FMLA and CFRA claims are properly analyzed together because the CFRA

17   adopts the language of the FMLA.  *See Kappelman v. City & Cty. of S.F.*, 2015 WL 6471184, at

18   *5 (N.D. Cal. Oct. 27, 2015) (citing *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 n.4 (9th Cir.

19   2003)).  "The FMLA creates two interrelated substantive rights for employees. . . .  First, an

20   employee has the right to take up to twelve weeks of leave for [enumerated reasons. . . .]  Second,

21   an employee who takes FMLA leave has the right to be restored to his or her original position or

22   to a position equivalent in benefits, pay, and conditions of employment upon return from leave. . .

23   .  The FMLA does not entitle the employee to any rights, benefits, or positions they would not

24   have been entitled to had they not taken leave. . . .  It simply guarantees that an employee's taking

25   leave will not result in a loss of job security or in other adverse employment actions."  *Xin Liu*,

26   347 F.3d at 1132 (citations omitted).

27          Plaintiff argues Defendants interfered with his rights under the FMLA/CFRA by

28   mischaracterizing his medical leave as personal leave, and by using his FMLA/CFRA leave as a

United States District Court
Northern District of California

30

factor in demoting him and decreasing his pay.  Opp'n at 21-26.  In the Ninth Circuit, claims that an employer interfered with an employee's right to FMLA leave by denying or misclassifying the leave as personal, or by retaliating against an employee for taking FMLA leave, both are treated as interference claims falling under 29 U.S.C. § 2615(a)(1).  *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001).  Defendants now request summary judgment on these claims on the grounds that Plaintiff cannot show a triable issue exists he was eligible for FMLA/CFRA leave, or that he suffered an adverse employment action because he exercised his rights under the FMLA/CFRA.  Mot. at 14-17.

To prove claim for interference with FMLA rights, Plaintiff must show: "(1) he eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled."  *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 913-14 (N.D. Cal. 2015) (citation omitted).  To prove a claim that Defendants impermissibly used his FMLA as a factor in his demotion, Plaintiff must show "by a preponderance of the evidence that [his] taking of FMLA-protected leave constituted a negative factor in the decision."  *Xin Liu*, 347 F.3d at 1135-36.

An employer's intent is not relevant in an interference claim: "evidence that an employer failed to reinstate an employee who was out on FMLA leave to [his] original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights."  *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011); *see also Bachelder*, 259 F.3d at 1125 (an employee "need only prove by a preponderance of the evidence that . . . taking of FMLA-protected leave constituted a negative factor in the decision").  As such, the *McDonnell Douglas* burden-shifting framework does not apply to interference claims.  *Xin Liu*, 347 F.3d at 1136 (citing *Bachelder*, 259 F.3d at 1124).  Plaintiff must prove his claims by a preponderance of the evidence using direct or circumstantial evidence, or both.  *Id.*

### 1.   Entitlement to leave

Defendants do not dispute that TIMEC was a covered employer under the FMLA and CFRA, or that Plaintiff was eligible for FMLA/CFRA leave when he took his three leaves of

31

absence.  Instead, Defendants argue it is undisputed that Plaintiff was not entitled to take

FMLA/CFRA leave because (1) he failed to return the requirement FMLA paperwork TIMEC sent

him; (2) the information Plaintiff provided in his Work Status Reports was insufficient to satisfy

the requirements for medical certification under the FMLA and CFRA; and (3) Plaintiff failed to

provide TIMEC at least 30 days' notice before beginning his leave for the second eye surgery.

Mot. at 15-16; Reply at 4-7.  The Court addresses each argument in turn.

      Both employers and employees have duties under the FMLA:

> If the employer lacks sufficient information to determine whether an employee's leave . . . qualifies under the FMLA, the employer should inquire further in order to ascertain whether the FMLA applies. [Cite.]  In response to an employer's inquiries, an employee must explain the reasons justifying the requested leave so as to allow the employer to determine whether the FMLA is implicated. [Cite.] The employer may deny leave where an employee fails to explain the reason for the leave, or does not state a qualifying reason. [Cite.] The employer may also require that the employee obtain, in a timely manner, a written certification by a health care provider regarding the medical condition necessitating leave. [Cite.]   A certification will be considered sufficient if it details several aspects of the health condition including, in relevant part, a statement of the medical necessity for the leave, the expected duration of leave, and a statement that the employee is unable to perform the functions of the employee's job. [Cite.] If an employer has reason to doubt the validity of a medical certification, the employee may be required to obtain a second medical opinion at the employer's expense. [Cite.]

*Bailey v. Sw. Gas Co.*, 275 F.3d 1181, 1185-86 (9th Cir. 2002) (citing 29 C.F.R. §§ 825.208(a),

2613).  An employee's failure to follow an employer's policy for requesting FMLA leave entitles

the employer to deny or delay FMLA-protected leave.  29 C.F.R. § 825.303(c).  When an

employer requires the employee to provide a medical certification supporting the request for leave,

the employee's failure to provide such certification entitles the employer to deny leave.  *Id.* §

825.305(d); *see also Bailey*, 275 F.3d at 1185-86 (plaintiff had failed to "shoulder her burden"

under the FMLA because the medical certification she returned to her employer did not address

the questions posed on the form and thus did not comply with FMLA); *Law v. Kinross Gold*

*U.S.A., Inc.*, 2016 651 F. App'x 645, 647-48 (9th Cir. 2016) (employee lost FMLA protection

because he did not deny receiving employer's letter emphasizing he was required to provide

documentation of his medical condition to secure leave under the FMLA, and did not deny failing

United States District Court
Northern District of California

1    to return proper forms).

2          A genuine issue of fact exists as to whether Plaintiff returned the required FMLA

3    paperwork TIMEC requested.  The parties dispute what paperwork TIMEC sent Plaintiff in

4    connection with his three leaves of absence, and whether Plaintiff returned all the documentation

5    TIMEC asked him to complete.  Plaintiff testified he provided medical certificates to TIMEC in

6    connection with each of his leaves.  Although TIMEC disputes receiving some of the certificates,

7    it produced in this litigation a Work Status Report for Plaintiff dated April 9, 2014, which placed

8    Plaintiff on modified leave through April 22, 2014; and another Work Status Report dated April

9    29, 2014, which retroactively placed Plaintiff on modified leave through April 29, 2014.  While

10   TIMEC denies that Plaintiff ever provided it with the April 9, 2014 Work Status Report (Morgan

11   Decl. ¶ 5), it fails to explain how TIMEC obtained the document that it produced it litigation.  In

12   any event, there is no evidence in the record establishing when Plaintiff provided the April 9, 2014

13   Work Status Report to TIMEC.  Defendants aver Plaintiff did not provide the April 29, 2014

14   Work Status Report until May 9, 2014, after his return to work.  Based on the evidence before the

15   Court, a reasonable jury could find Plaintiff provided the information requested by TIMEC,

16   including the medical certificates he provided to TIMEC in connection with each of his three

17   leaves of absence.

18         Defendants next argue the medical certificates were inadequate to establish his entitlement

19   to medical leave because they did not contain the statutorily-required information.  The FMLA

20   requires medical certifications for leave to include the name and contact information of the health

21   provider; the date on which the condition commenced and its likely duration; and a statement of

22   appropriate medical facts regarding the health condition at issue.  *See* 29 C.F.R. § 825.306.  The

23   CFRA deems medical certifications sufficient if they contain the date the employee's health

24   condition started, the likely duration of the condition, and a statement the employee is unable to

25   work due to the condition.  *See Lonicki v. Sutter Health Cent.*, 43 Cal. 4th 201, 211 (2008)

26   (analyzing Cal. Gov't Code § 12945.2(k)(1)).  The parties dispute whether the medical certificates

27   Plaintiff provided are sufficient, but even if the certificates were incomplete, it would not defeat

28   Plaintiff's claims here.  When an employee returns a medical certification but the employer deems

United States District Court
Northern District of California

the certification incomplete[9], the employer "shall" so advise the employee and "shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c).  The employer must provide the employee with seven days to cure any deficiency.  *Id*.  If the employee does not cure the deficiency identified by the employer, the employer may deny FMLA leave.  *Id*.  It is undisputed, however, that TIMEC (1) did not follow up with Plaintiff when it did not receive the responses it expected or required from Plaintiff, even though it was TIMEC's regular business practice to do so; and (2) did not advise Plaintiff the Work Status Reports were incomplete or insufficient certifications for purposes of establishing his eligibility for FMLA or CFRA leave (as opposed to establishing his fitness to return to work), and did not afford him the opportunity to cure the deficiencies TIMEC identifies in its Motion.  A reasonable juror could conclude TIMEC failed to meet its duties under the FMLA/CFRA because it did not advise Plaintiff in writing that the certificates were insufficient, and provide him with an opportunity to cure the deficiencies.

A genuine issue of fact also exists regarding the sufficiency of the notice provided for his second eye surgery.  Plaintiff testified at his deposition that he provided a letter at the time of his first eye surgery that stated the date of his second eye surgery, for which he took his third leave of absence.  Although neither party produced a letter meeting this description, a reasonable juror could conclude Plaintiff informed TIMEC about his second surgery in March 2014, months before going on leave for that surgery.

A reasonable trier of fact accordingly could conclude that Plaintiff was entitled to FMLA/CFRA leave, and that TIMEC violated the FMLA/CFRA by mischaracterizing Plaintiff's leave as personal leave.

### 2.    Restoration to Equivalent Position upon Return

Defendants contend Plaintiff would have been demoted regardless of going on leaves because Gutierrez did not think Plaintiff performed adequately as general foreman, and because the August 2014 restructuring of the on-the-run group eliminated Plaintiff's position.  Mot. at 17.

---

[9] A certification may be deemed incomplete if it is not properly completed or if the information provided in the certification is "vague, ambiguous, or non-responsive."  *Id*.

United States District Court
Northern District of California

1    This being the case, they argue Plaintiff cannot prevail on his claim for interference with

2    FMLA/CFRA rights because he cannot show he suffered any adverse consequence as a result of

3    taking his leaves.

4         A reasonable trier of fact could find the April and August demotions and pay decreases

5    constitute a violation of Plaintiff's right to be reinstated to his "original position or to a position

6    equivalent in benefits, pay, and conditions of employment upon return from leave." *Xin Liu*, 347

7    F.3d at 1132.  The FMLA defines an "equivalent position" as "one that is virtually identical to the

8    employee's former position in terms of pay, benefits and working conditions, including privileges,

9    perquisites and status.  It must involve the same or substantially similar duties and responsibilities,

10   which must entail substantially equivalent skill, effort, responsibility, and authority."  29 C.F.R. §

11   825.215(a).  According to Plaintiff, he discovered he had been demoted to craft foreman and that

12   his pay had been reduced while he was on his first medical leave; it is undisputed that craft

13   foreman is not a position "equivalent" to that of a general foreman.  *See* Gutierrez Decl. ¶ 3

14   (Plaintiff was "demoted").  The demotion was retroactively "cancelled" only after Plaintiff

15   complained to Holt upon his return and Holt obtained permission from Chevron to restore

16   Plaintiff's prior rate of $38/hour; TIMEC issued Plaintiff a check making up for the difference in

17   salary after the fact.  The day Plaintiff returned from his third medical leave, Defendants once

18   again demoted Plaintiff and reduced his pay.  (That second pay reduction did not take effect

19   because Plaintiff was laid off that day.)  It is also undisputed that the material expediter position to

20   which Plaintiff was demoted in August 2014 is not "equivalent" to any type of foreman position.

21   Defendants argue the demotion to material expediter was based on Gutierrez's evaluation of

22   Plaintiff's performance prior to going on his third medical leave, after Plaintiff had been demoted

23   to craft foreman.  But TIMEC never documented any of Plaintiff's alleged performance issues in

24   writing, and Plaintiff identified numerous instances in the record where TIMEC and Chevron

25   personnel praised his performance as general foreman.  The validity of Gutierrez's evaluation that

26   Plaintiff was performing inadequately as a craft foreman is also cast into doubt by the fact

27   Defendants offered Plaintiff a craft foreman position at $35/hour several days after the demotion

28   to material expediter.

United States District Court
Northern District of California

Defendants have the burden of establishing that because of the restructuring, Plaintiff "would not otherwise have been employed at the time" he requested reinstatement.  *See* 29 C.F.R. § 825.216(a).[10]  As an initial matter, the August 2014 restructuring does not explain the April 2014 demotion.  In arguing the August 2014 demotion was lawful because the restructuring eliminated Plaintiff's job, Defendants rely on *Hopkins v. Elec. Data Sys. Corp*., 1997 U.S. Dist. Lexis 19422, at *16 (E.D. Mich. Sept. 30, 1997).  *See* Mot. at 16.  In *Hopkins*, the employer was able to demonstrate that it decided to eliminate an employee's position independent the employee's FMLA leave by showing it terminated another employee in the same position plaintiff had held, where that second employee had not taken FMLA leave.  *See Hopkins*, 1997 U.S. Dist. Lexis 19422, at *16.  Defendants have made no such showing here (and while Plaintiff argues his position was the only one affected by the restructuring, he also has not supported his argument with any competent evidence).

Based on the repeating occurrence that Plaintiff was demoted twice, each time when he went on leave, a reasonable trier of fact could find Plaintiff's FMLA/CFRA leaves were impermissibly considered a factor in the adverse consequences Plaintiff experienced when returning from his first and third leaves.  *See Xin Liu*, 437 F.3d at 1137 ("[P]roximity in time between the leave and her termination also provides supporting evidence of a connection between the two events.").  A reasonable trier of fact also could reject Gutierrez's subjective evaluation of Plaintiff's performance, which was uncorroborated by any written evaluation, and at odds with the testimony of other TIMEC and Chevron personnel.  *See id*. at 1136 (where termination relies on subjective evaluations, "careful analysis of possible impermissible motivations is warranted" because subjective evaluations "are particularly susceptible of abuse and more likely to mask pretext") (citation and internal quotation marks omitted).

---

[10] The FMLA provision Defendants cite does not specifically contemplate the circumstances at issue here.  Instead, it addresses lay-offs/reductions in force; elimination of a shift or of overtime; employment for specific term or project; prevention of "substantial and grievous economic injury" to the employer's operations should a salaried employee be reinstated; circumstances where an employee is unable to perform an essential function of the position; fraudulent securing of FMLA leave; and violation of a uniformly-applied policy governing outside or supplemental employment. 29 C.F.R. § 825.216(a).

United States District Court
Northern District of California

1    The Court finds genuine issues of material fact exist whether TIMEC impermissibly

2    considered Plaintiff's FMLA/CFRA leaves as a factor in his demotions and eventual lay off.

3          3.    Conclusion

4    For the foregoing reasons, the Court denies Defendants' Motion for Summary Judgment on

5    Plaintiff's FMLA and CFRA claims.

6    **D.    Constructive Discharge**

7    "To establish a constructive discharge under California law," Plaintiff "must prove that: (1)

8    his working conditions at the time of his resignation were so intolerable or aggravated that (2) a

9    reasonable person in [his] position would have been compelled to resign, and that (3) [Defendants]

10   either intentionally created or knowingly permitted the intolerable working conditions." *King v.*

11   *AC & R Advert.*, 65 F.3d 764, 767 (9th Cir. 1995) (citing *Turner v. Anheuser-Busch, Inc.*, 7 Cal.

12   4th 1238, 1250 (1994)).  Whether conditions are sufficiently intolerable normally constitutes a

13   question of fact.  *Id.* (both).

14   Defendants argue the conditions Plaintiff experienced were not sufficient, as a matter of

15   law, to trigger a constructive discharge.  Mot. at 22-23.  Specifically, they contend being demoted

16   to material expediter, while being paid at the craft foreman rate, did not justify Plaintiff's

17   resignation.  *Id.*  Defendants are correct, insofar as "a poor performance rating or a demotion, even

18   when accompanied by a reduction in pay, does not by itself trigger a constructive discharge[.]"

19   *Turner*, 7 Cal. 4th at 1247.  Nonetheless, based on the evidence in the record here, a reasonable

20   trier of fact could find: (1) Defendants demoted Plaintiff in title and in pay twice in a five-month

21   period; (2) TIMEC did not explain to Plaintiff the reasons for the demotions, and never formally

22   identified any performance issues during Plaintiff's reviews; (3) the demotions were not justified

23   by Plaintiff's performance record at TIMEC, and the first demotion was reversed as soon as

24   Plaintiff complained about it to Holt; (4) in August 2014, Defendants demoted Plaintiff from

25   general foreman to material expediter and required him to perform the same duties as a

26   subordinate employee; and (5) when Plaintiff informed Gutierrez he would rather be laid off than

27   work under those conditions, TIMEC laid him off.  Based on these findings, a reasonable trier of

28   fact could conclude TIMEC created intolerable working conditions for Plaintiff such that he felt

United States District Court
Northern District of California

37

forced to quit on August 4, 2014 and to turn down the craft foreman position TIMEC offered him two days later.  *See Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361-62 (9th Cir. 1987) (while "single isolated instance" of discrimination may be deemed insufficient as a matter of law to constitute constructive discharge, evidence that employee who previously always received excellent reviews was subjected to three incidents of differential treatment, including transfer of supervisory duties away from her and being told she "could either resign or be demoted to a position in which she would be supervised by her subordinate trainee" could lead reasonable person to find conditions were so intolerable as to justify resignation).  Plaintiff has established a genuine issue of material fact exists whether his employer subject him to conditions so intolerable he believed he had to quit and turn down the offered craft foreman position.

## CONCLUSION

Based on the analysis above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment as follows:

(1)  Summary judgment is granted in favor of Transfield Ltd. and against Plaintiff on all claims, as no genuine issue of material fact exists as to whether Transfield Ltd. was Plaintiff's employer.

(2)  Summary judgment is granted in favor of both Defendants and against Plaintiff on the FEHA claims for age and disability discrimination, as no genuine issue of material fact exists as to whether Defendants discriminated against Plaintiff on the basis of age or disability.

(3)  Summary judgment is denied on Plaintiff's FMLA and CFRA claims because genuine issues of material fact exist as to whether TIMEC impermissibly interfered with Plaintiff's right to take FMLA leave and impermissibly considered Plaintiff's leaves as a factor in demoting him and eventually laying him off.

(4)  Summary judgment is denied on Plaintiff's constructive discharge claim because a reasonable trier of fact could conclude Plaintiff's work conditions had become so intolerable as to warrant resignation in August 2014.

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court vacated existing pretrial deadlines.  Plaintiff and TIMEC shall meet and confer and submit a joint case management conference statement no later than November 21, 2016.

Additionally, **IT IS HEREBY ORDERED** that Plaintiff and TIMEC are **REFERRED** to a settlement conference with a magistrate judge, to be conducted within the next 90 days.

**IT IS SO ORDERED.**

Dated: November 7, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California