UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM RAZO,<br><br>    Plaintiff,<br><br>v.<br><br>TIMEC COMPANY, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-03414-MEJ<br><br>**ORDER RE: MOTIONS FOR LEAVE TO AMEND**<br><br>Re: Dkt. No. 118, 121 |

## INTRODUCTION

In the weeks leading up to the May 18, 2017 pretrial conference, it became apparent the matter was not ready to proceed to trial. *See* Dkt. Nos. 108, 113, 114, 115, 116. At the conclusion of the pretrial conference, the Court ordered any party desiring to amend the pleadings to file a motion seeking leave to do so.

Pending before the Court are (1) TIMEC's Motion for Leave to File First Amended Answer (Def.'s Mot., Dkt. No. 118), and (2) Razo's Motion for Leave to File a Second Amended Complaint (Pl.'s Mot., Dkt. No. 121). The matter was fully briefed, and the Court finds these matters suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **DENIES AS MOOT** TIMEC's Motion and **DENIES** Razo's Motion for the following reasons.

## DISCUSSION

**A.   Legal Standard**

The Court set January 15, 2016 as the last date for the parties to seek leave to amend their pleadings. *See* CMO, Dkt. No. 20. Neither party sought leave to amend until more than one year

later at the pretrial conference. Because the parties seek leave to amend after the deadline the Court imposed in its Case Management Order, they must demonstrate good cause to do so. *See* Fed. R. Civ. P. 16; Civ. L.R. 16-2. "The 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end." *Id.*

If the party seeking leave to amend demonstrates good cause for doing so, the Court next must evaluate whether the proposed amendments are permissible under Rule 15. While such amendments are granted with liberality, they should not be granted where the amendment would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994). The consideration of prejudice to the opposing party carries the greatest weight among these factors. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B.  Plaintiff's Motion for Leave to File SAC**

    1.  Proposed Amendments

After the pretrial conference, Razo abandoned his FMLA interference and retaliation claims. Dkt. No. 117. Immediately thereafter, he moved for leave to file a second amended complaint. Pl.'s Mot., Ex. 2 (Proposed Redlined SAC). In his Motion, he argues he seeks leave to file the SAC to add allegations that TIMEC "interfered with [his] rights pursuant to the [FMLA and CFRA] by failing to notify him of those rights within the applicable time period once he gave the company notice of his need for leave and that Defendant failed to inform him that his certification papers were inadequate." Mot. at 2; *see also* MPA at 1.

The proposed SAC reflects Razo's abandonment of his FMLA claim(s), and asserts only three claims: Retaliation under CFRA (First Cause of Action), CFRA Leave Interference (Second Cause of Action), and Wrongful Termination in Violation of Public Policy (Third Cause of Action). *See also* Proposed Redlined SAC ¶¶ 1 (listing claims), 3 (alleging it includes California

law claims only). But the proposed SAC continues to allege that TIMEC interfered with Razo's medical leave under both the FMLA and CFRA, and also adds a number of theories of liability which Razo did not previously allege in either the operative FAC or raise in connection with TIMEC's first motion for summary judgment:

> Defendant engaged in a continuous pattern and practice of interfering with Plaintiff's leave. Medical certifications created by his doctor were provided to Defendant that substantially complied with any certification requirements. Based on the information provided by Plaintiff and his doctors, Plaintiff is informed and believes that Defendant had all required information to classify his medical leave protected by FMLA and CFRA. Defendant, despite the notice provided to it, failed to provide adequate notice to RAZO. Defendant failed to timely provide Plaintiff with required information related to taking protected medical leave. Defendant failed to inform Plaintiff of any alleged deficiencies in the notice that he provided to Defendant related to his medical leave. In addition, Defendant failed to notify Plaintiff that it was denying his medical leave as "protected leave" pursuant to the FMLA or CFRA and to afford Plaintiff and opportunity to correct any alleged deficiencies. Defendant failed to classify all of Plaintiff's leave as protected by FMLA or CFRA. Defendant miscalculated the amount of leave that was available to Plaintiff and misclassified his medical leave based on those miscalculations. Plaintiff notified Defendant of his return dates and Defendant interfered with his rights to return to work. During Plaintiff's three medical leaves starting on April 8, 2014, Defendant engaged in a continuing violation of the CFRA and FMLA requirements against retaliation and interference by misclassifying and failing to grant Plaintiff protected leave, cutting Plaintiff's pay, reclassifying his position, changing his work duties, replacing him with a different employee who had not taken leave, and failing to return him to the position he had held prior to informing Defendant of his need for taking medical leave. When he refused to accept an inferior position that stripped him of his supervisorial duties and cut his pay, he quit by asking to be laid off because he considered the working conditions to be so intolerable that a reasonable person in his position would not continue working for Defendant.

*Id.* ¶ 16. Razo also continues to base his wrongful termination claim in part on TIMEC's alleged violation of the FMLA. *Id.* ¶ 43.

2. Arguments of the Parties

Razo argues good cause exists under Rule 16 because he did not learn of "Defendant's deficiencies until after the time for amending his pleading had expired [and] Defendant did not assert these alleged deficiencies as a defense until the eve of trial." Pl.'s MPA at 2. "[T]he time for filing an amended complaint was January 1, 2016, but the depositions that provided any

3

relevant information about Defendant's failure to give notice were not taken until April and May, 2016. . . . This would seem to satisfy a finding of good cause." *Id.* Razo argues there was no undue delay in seeking the amendment because it was not until the pretrial conference that he discovered TIMEC took the position he had not sufficiently pleaded these allegations. *Id.* at 6; Organ Decl. ¶ 6, Dkt. No. 121-1. He also argues there is no prejudice to TIMEC because it has been aware of his arguments regarding notice since the May 2016 depositions and the summary judgment briefing that resulted in the Court's November 7, 2016 order. Pl.'s MPA at 6. With respect to the Rule 15 prejudice analysis, Razo argues TIMEC has known of these many issues since the parties briefed the first Motion for Summary Judgment and thereafter participated in the pretrial meet and confer process. *Id.* at 2, 5.

TIMEC does not address the Rule 16 good cause standard. TIMEC focuses instead on the futility of the proposed amendment, i.e., that any amendment is futile because Razo did not exhaust his administrative remedies on the new allegations. Def.'s Opp'n at 3, Dkt. No. 123. TIMEC argues it will be prejudiced by the proposed amendment, and will require additional discovery to cure such prejudice. *Id.* at 3-4. TIMEC also argues the proposed allegations will add four new theories of liability. *Id.* at 2.

3. <u>Analysis</u>

The FAC alleges TIMEC interfered with Razo's rights under the FMLA and CFRA; the only specific example of interference alleged is that TIMEC retaliated against Razo when he returned from leave by decreasing his salary and demoting him. *See* FAC ¶¶ 30 (FMLA), 38 (CFRA), 46 ("It is unlawful to interfere with an employee's right to take FMLA leave. Plaintiff was entitled to take FMLA leave, and Defendants interfered with that right."), 53 ("It is unlawful to interfere with an employee's right to take CFRA leave. Plaintiff was entitled to take CFRA leave, and Defendants interfered with that right."), Dkt. No. 15. In Razo's Opposition to TIMEC's First Motion for Summary Judgment, it also became apparent Razo argued TIMEC interfered with his right to medical leave by denying and/or misclassifying his leave. *See* Pl.'s Opp'n to Mot. for Summ. J. at 21-26 (Defendants interfered with his rights under the FMLA/CFRA by mischaracterizing his medical leave as personal leave, and by retaliating against him for taking

4

leave), Dkt. No. 54. With the exception of denial/misclassification of protected leave, Razo's proposed new factual allegations reflect theories completely absent from the FAC: namely, TIMEC's alleged failure to provide notice to Razo of his rights under CFRA/FMLA, failure to inform him of alleged deficiencies in his paperwork, and miscalculation of available leave. *See* FAC.

Razo contends TIMEC nonetheless understood he was relying on these theories because the parties addressed the issue of notice "at least to some degree" in connection with TIMEC's First Motion for Summary Judgment. *See* MPA at 4-5 (citing Pl.'s Opp'n to Mot. for Summ. J. at 22-23).[1] While Razo mentioned these issues in his Opposition, he did not raise them as examples of interference. On the contrary, when addressing TIMEC's interference with his right to take protected leave under the FMLA and CFRA, Razo only argued that TIMEC interfered with his rights by mischaracterizing his leave as personal leave and used his leave as a factor in his demotion and pay decrease. Pl.'s Opp'n to Mot. for Summ. J. at 24-25. In its First Order re: Summary Judgment, the Court wrote that Razo's interference claim was based on mischaracterization of his protected leave as personal leave and use of his leave as a factor in demoting him and decreasing his pay. First Order re: Summ. J. at 30-31. The Court *sua sponte* raised the issue of TIMEC's failure to follow up on alleged deficiencies with his medical certifications as a potential basis for an interference claim: "A reasonable juror could conclude TIMEC failed to meet its duties under the FMLA/CFRA because it did not advise Plaintiff in writing that the certificates were insufficient, and provide him with an opportunity to cure the deficiencies." *Id.* at 31. The Court did not discuss TIMEC's alleged failure to provide notice to Razo of his rights under the FMLA/CFRA. *See id*. There is no indication TIMEC was (or could have been) on notice that Razo's interference claim was also based on TIMEC's alleged failure to provide notice of his rights under FMLA/CFRA or miscalculation of his leave.

---

[1] In opposition to TIMEC's motion, Razo argued TIMEC could not claim his failure to submit a medical certification as a defense if the employer had failed to inform him of the need for certification. Pl.'s Opp'n to Mot. for Summ. J. at 22. He mentioned the fact that no TIMEC employee followed up with him regarding the allegedly missing forms to support his argument he had returned all paperwork that had been requested oh him. *Id.* at 22-23.

Razo acknowledges that he learned of the new facts he seeks to allege by May 2016 (Pl.'s MPA at 2), and the Court filed its First Order re: Summary Judgment on November 7, 2016. Razo did not seek leave to amend to add his proposed new theories of liability until the parties filed their joint pretrial conference statement on April 28, 2017 (Dkt. No. 94 ¶ 8), and did not actually move for leave to amend until ordered to do so by the Court at the May 18, 2017 pretrial conference, only one month before trial was scheduled to begin. The Court cannot find that this reflects diligence sufficient to support good cause.

The Court **DENIES** Razo's Motion for Leave to Amend. Having abandoned his FMLA claims, the only claims remaining to be tried are claims for interference and retaliation under CFRA based on denial/misclassification of leave under CFRA[2] and/or retaliation for taking CFRA leave, and for constructive discharge. Moreover, having abandoned his FMLA claims, Razo cannot base his constructive discharge claim on a violation of the FMLA.

## B.     Defendant's Motion for Leave to File Amended Answer

During meet and confer discussions the parties held before the pretrial conference, Razo argued TIMEC had not pleaded three affirmative defenses upon which it sought to rely: failure to provide certification for protected leave (the "certification" defense); failure to provide fitness for duty or return-to-work statements (the "fitness to work" defense); and that Razo's employment would have ceased regardless of whether he took leave (the "employment would have ceased" defense). *See* Johnston Decl. ¶¶ 9-11, Dkt. No. 120.

In its operative Answer, TIMEC asserts a number of affirmative defenses, including (1) avoidable consequences ("Plaintiff unreasonably failed to take advantage of available preventive or corrective opportunities"); (2) privileged, good faith, and justified conduct ("defendant's

---

[2] As discussed in the Court's Second Order re: Summary Judgment, TIMEC contends the CFRA regulations applicable to Razo's claims did not impose on an employer any obligation to follow up on an employee's failure to return, or to properly complete, CFRA-related paperwork. *See* Dkt. No. 150 at 19. That Razo may not base his interference claim on TIMEC's failure to follow up with him regarding inadequate paperwork does not prevent him from showing this precludes TIMEC from arguing his Work Status Reports were insufficient medical certifications under CFRA. *See id*. Similarly, this Order does not preclude Razo from arguing he TIMEC did not mail the FMLA/CFRA packets to him, and thus he was not under any obligation to provide medical certifications. *Id.* at 19-20.

conduct was privileged and/or justified under California law and for valid business reasons . . . [was] a just and proper exercise of management discretion, [was] undertaken . . . based on legitimate, non-discriminatory reasons, and [was] job related for the position in question and consistent with business necessity"; (3) business necessity ("Defendant would have made the same employment decision with regard to Plaintiff in any case for legitimate, lawful, non-discriminatory and non-retaliatory business reasons"); (4) failure to exhaust internal remedies (damages for lost wages must be reduced based on Plaintiff's failure to exhaust internal remedies to receive alleged unpaid wages). *See* Answer at pp. 14 & 16, Dkt. No. 18. TIMEC argues its new proposed affirmative defenses are encapsulated by these existing affirmative defenses. *See* Def.'s Mot. at 5.

Razo does not respond to TIMEC's argument the new proposed defenses are encapsulated in the existing affirmative defenses; rather, he argues only these particular affirmative defenses were not included in the Answer. Pl.'s Opp'n at 1, Dkt. No. 122.

As an initial matter, it is not clear to the undersigned whether the certification defense is a proper affirmative defense or is one of the elements Razo must establish to state a claim that he was entitled to CFRA leave. To the extent they are affirmative defenses, the Court finds that the certification, fitness to work and employment would have ceased defenses are already encompassed by the affirmative defenses in the operative answer. Indeed, TIMEC argued two of these defenses squarely in its First Motion for Summary Judgment. *See* Dkt. No. 43 at 14-16 ("Razo was ineligible for the FMLA and CFRA because he failed to provide proper certification"); *id.* at 16-17 (addressing demotion for performance reasons and reorganization of TIMEC in the section entitled "Plaintiff cannot rebut Defendant's showing that had Plaintiff not taken leave, the same reduction would have occurred"). Razo did not argue in his Opposition that TIMEC had insufficiently pleaded these defenses in its Answer, that he was surprised by these defenses, or that he needed additional discovery to respond to these defenses; he responded to the arguments on the merits. *See* Pl.'s Opp'n to Mot. for Summ. J. at 5-6, 10-13, 22-23, 29.

Because the Court finds TIMEC's proposed narrower affirmative defenses are encapsulated in its operative Answer, amendment is unnecessary, and TIMEC's Motion to Amend is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: November 3, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge